### COSTNER v. UNITED STATES.

#### No. 5119.

Circuit Court of Appeals, Fourth Circuit.

Dec. 18, 1943.

430

W. A. Hall, Jr., of Richmond, Va., for appellant.

Melva M. Graney, Atty., Department of Justice, of Washington, D.C. (Tom C. Clark, Asst. Atty. Gen., and Theron L. Caudle, U. S. Atty., of Wadesboro, N.C., on the brief), for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

This appeal was taken from an order of the District Court passed on April 7, 1943 whereby the court denied appellant's motion to vacate a sentence of imprisonment imposed on April 2, 1934, and to enter a new judgment. This procedure, designed to test the validity of the sentence, was taken in accordance with the decision in Holiday v. Johnston, 313 U.S. 342, 61 S.Ct. 1015, 85 L.Ed. 1392.

The appellant and others were indicted in 1934 under an indictment of twelve counts charging various offenses in connection with a robbery of the mail. We are concerned only with counts 1 and 2. Count 1 alleged that on November 15, 1933, while mail matter was being delivered from the railway station to the post office in Charlotte, North Carolina, the defendants assaulted the custodians thereof with intent to rob them of the mail matter; and count 2 alleged that the defendants at the same time robbed the custodians of the mail matter in their custody and, in effectuating the robbery, put their lives in jeopardy by the use of dangerous weapons. The appellant was convicted and sentenced to five years' imprisonment on count 1 and twenty-five years on count 2, the sentences to run consecutively. By his motion he attacked the validity of the five year sentence under count 1 and asked the court to vacate its judgment and to impose a new sentence for a term of twenty-five years.

The appellant contends that the five year sentence under count 1 of the indictment for assault with intent to rob was invalid because of the imposition of the sentence of twenty-five years on count 2 for the completed crime of robbery effected by putting the lives of the custodians in jeopardy by the use of dangerous weapons. Since the assault with intent to rob was committed at the same time as the robbery itself and constituted an essential part thereof, it is said that the five year sentence was invalid because it was imposed upon an ingredient of a crime for which the maximum penalty of twenty-five years for the whole offense was also exacted. The United States concedes that the five year sentence was void and should be stricken out, notwithstanding certain contrary prior decisions, because the language of the statute, interpreted in the light of its legislative history, does not manifest an intent to punish the putting of a life in jeopardy in the effectuation of a robbery of the mail as a separate crime distinct from the assault or the robbery which it comprehends. We have, therefore, only to determine whether this concession is justified under the language of the statute and the controlling decisions.

At the time of the conviction, the applicable statute, Act of March 4, 1909, Ch. 321, § 197, 35 Stat. 1126, § 197 of the Criminal Code, 18 U.S.C.A. § 320, provided as

follows: "Whoever shall assault any person having lawful charge, control, or custody of any mail matter, with intent to rob, steal, or purloin such mail matter or any part thereof, or shall rob any such person of such mail or any part thereof, shall, for a first offense, be imprisoned not more than ten years; and if in effecting or attempting to effect such robbery, he shall wound the person having custody of the mail, or put his life in jeopardy by the use of a dangerous weapon, or for a subsequent offense, shall be imprisoned twenty-five years."

 It is immediately clear upon reading this statute that Congress intended to put an assault upon a custodian of mail, with intent to rob, and a completed robbery upon the same footing so far as punishment is concerned. The word "rob" is used in its common law sense, Harrison v. United States, 163 U.S. 140, 16 S.Ct. 961, 41 L. Ed. 104, that is, it involves the taking, animo furandi, and asportation of property from the person of another against his will by violence or putting him in fear. Congress evidently regarded the exercise of physical force with this intent as dangerous to the public welfare as the actual taking of the property which it is designed to accomplish, so that, whether successful or not, the same punishment may be imposed. But the idea that even in an extreme case Congress intended to authorize two punishments for the same unlawful conduct, that is, ten years for the assault with intent to rob, and ten years for the robbery, is too unreasonable to be seriously entertained; and the same observation applies if the assault with intent or the completed robbery is aggravated by wounding or putting the life of the custodian in jeopardy by dangerous weapons, for which a maximum penalty of twenty-five years is provided. In short, two grades of punishment were provided, one for the lesser and one for the greater crime in the alternative; and it cannot be supposed that the penalties are cumulative, for this would

mean that in every case of an aggravated assault to rob, whether effective or not, a sentence of thirty-five years could be imposed although the reader of the statute learns that a maximum of twenty-five years may be exacted for such a crime.[1]

Decisions inconsistent with this view support the conclusion reached by the court below. See Schultz v. Biddle, 8 Cir., 19 F.2d 478; Schultz v. Zerbst, 10 Cir., 73 F. 2d 668, and Sansone v. Zerbst, 10 Cir., 73 F.2d 670; cf. Colson v. Johnston, D.C.Cal., 35 F.Supp. 317. But these decisions do not discuss at all the manifest purpose of Congress which we have attempted to describe. They are based upon the rule established by decisions of the Supreme Court that Congress has power to prohibit each of several distinct and separate acts and to provide a separate punishment for each, although all may be inspired by the same criminal intent and comprised in the same transaction, provided that each of the offenses involves a distinct element not included in the others. Thus it was held in Morgan v. Devine, 237 U.S. 632, 35 S.Ct. 712, 59 L.Ed. 1153, that the larceny of mail described in § 190 of the Criminal Code, 18 U.S.C.A. § 313, is a distinct crime from that of breaking into a post office with intent to commit larceny therein forbidden by § 192 of the Code, 18 U.S.C.A. § 315; and even though offenses against these sections are committed at the same time as part of the same transaction, they may be separately punished.

So also it was held in Albrecht v. United States, 273 U.S. 1, 47 S.Ct. 250, 71 L.Ed. 505, that a person might be punished under the Prohibition Act, 27 U.S.C.A. § 1 et seq., for possessing and then selling the same intoxicating liquor without violating the prohibition of the Fifth Amendment against the imposition of a double penalty. The court said (page 11 of 273 U.S., page 253 of 47 S.Ct., 71 L.Ed. 505): "The contention is that there was double punishment because the liquor which the defendants were convicted for having sold is the

---

[1] The statute belongs to the same class as the federal assault statute, § 276 of the Criminal Code, 18 U.S.C.A. § 455, which we considered in Clemons v. United States, 4 Cir., 137 F.2d 302. This statute fixes maximum punishments as follows: twenty years' imprisonment for assault with intent to murder; five years' imprisonment and $1,000 fine for assault with intent to do bodily harm with a dangerous weapon; six months and $500 fine for unlawfully striking or wounding another; and three months and $300 fine for assault. It has never been supposed that under this statute one who assaults and strikes another with a dangerous weapon with intent to murder could be convicted of four separate crimes and subjected to the imposition of all of the penalties listed above, aggregating twenty-five years and nine months' imprisonment and $1,800 fine.

same that they were convicted for having possessed. But possessing and selling are distinct offenses. One may obviously possess without selling, and one may sell and cause to be delivered a thing of which he has never had possession, or one may have possession and later sell, as appears to have been done in this case. The fact that the person sells the liquor which he possessed does not render the possession and the sale necessarily a single offense. There is nothing in the Constitution which prevents Congress from punishing separately each step leading to the consummation of a transaction which it has power to prohibit and punishing also the completed transaction."

Various tests are suggested in these and other decisions to guide one in determining whether related unlawful acts must be treated as a single offense or as separate crimes separately punishable. It is said in Morgan v. Devine, 237 U.S. 632, 641, 35 S.Ct. 712, 59 L.Ed. 1153, that the test of identity of offenses is whether the same evidence is required to sustain them; if not, then the fact that both charges grow out of one transaction does not make a single offense where two are defined by the statutes. In Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306, it is stated that when the same act or transaction constitutes a violation of two distinct statutory prohibitions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not. It can be plausibly argued that neither test completely justifies separate penalties for assault to rob and for robbery in the course of the same transaction under § 197 of the Criminal Code. Evidence of assault to rob will not support a charge of robbery but proof of robbery will sustain a charge of assault with the unlawful intent; moreover, a charge of assault to rob does not require proof of any fact which the charge of robbery does not require. In any event, the intent of Congress to create separately punishable offenses in the statutes discussed in these cases, and in others cited in Schultz v. Biddle, 8 Cir., 19 F.2d 478, 480, is much more distinct and clear than in § 197 of the Criminal Code; and we are not deterred by the earlier decisions from the conclusion that the section should be given its normal meaning and that Congress did not intend, even if it had the power, to subject an offender who has robbed the mails to the penalty for the completed offense and also to the penalty for the assault with intent which the completed offense necessarily includes.

It is noteworthy that the federal statutes, codified in 12 U.S.C.A. § 588b(a) and (b), relating to bank robbery, have been given a similar interpretation. Subsection (a) prohibits the taking by force or by putting in fear from the person or presence of another any money or thing of value belonging to a bank; also any entry into a bank with intent to commit larceny therein; and also the larceny of any money or thing of value belonging to the bank. Varying penalties are prescribed for these offenses. Subsection (b) makes it an offense to assault any person or put his life in jeopardy by the use of a dangerous weapon while committing or attempting to commit any of the offenses defined in subsection (a) and a heavier penalty is prescribed for such conduct. It has been held that while the offenses defined in subsection (a) are distinct and may be the subject of separate penalties, subsection (b) creates no separate offense but merely provides for increased punishment if the crimes named in subsection (a) are committed under aggravated circumstances. Durrett v. United States, 5 Cir., 107 F.2d 438; Hewitt v. United States, 8 Cir., 110 F.2d 1; Wells v. United States, 5 Cir., 124 F.2d 334.

Like construction should be given to the statute under consideration in the pending case. In each instance Congress was dealing with a particular class of crime, bank robbery in 12 U.S.C.A. § 588b, and mail robbery in § 197 of the Criminal Code. After providing the penalties for the commission of these crimes under ordinary circumstances Congress fixed a heavier penalty for the commission of the crimes under aggravated circumstances, but it did not intend to create separate offenses and to authorize the imposition of both penalties in any case where the offense assumed the more heinous form.

The legislative history of § 197 of the Criminal Code furnishes support for our conclusion. The statute originated in 1810 and then provided a maximum sentence of three years' imprisonment for an ineffectual attempt to rob a custodian of the mail by assaulting him, shooting at him or threatening him with dangerous weapons. The statute also provided a maximum sentence of ten years' imprisonment for robbery and a sentence of death for wounding the custodian in effectuating the robbery

or for the commission of a second robbery.[2] Later the punishment of imprisonment for the two offenses first described was modified to imprisonment from two to ten years and five to ten years respectively, and the death penalty for the commission of the offenses last described was reduced to life imprisonment; and the statute was separated into two parts whereby the completed crimes were put in the first section and the ineffectual attempt in the second section.[3]

It will be observed that under these statutes an offender could not be lawfully sentenced for assault with intent to rob unless it had not been effectuated; and that the penalties for robbery accompanied by wounding the custodian with a dangerous weapon were so severe, that is, death or life imprisonment, as to preclude the idea that the offender could also be sentenced to suffer in addition the penalty provided for robbery without these aggravating circumstances.

Finally § 197, set out above in the form in which it existed at the time of the commission of the offense under consideration, was enacted as part of the Criminal Code in 1909. During the consideration of the Code by a joint committee of the two houses of Congress it was proposed to enact one section to replace the two mail robbery sections of the Revised Statutes and in the proposed section all mention of the use of a dangerous weapon, either in con nction with robbery or an assault to rob, was eliminated,[4] and the punishment for both assault and for robbery was changed to imprisonment for not more than ten years. In the debate upon this section in the Senate the following statement was made: "The Committee welded together the two sections (R.S. §§ 5472 and 5473),

each covering a different grade of the offense, (assault with intent to rob and the robbery), and undertook to make the maximum punishment sufficiently severe and comprehensive to apply to both of them."[5] It was objected that the proposed section did not specify the different grades of the offenses and did not put emphasis upon the fact that a higher grade should have a higher punishment;[6] and it was agreed that the proposed section should be redrafted "retaining the present provision classifying and grading these offenses."[7]

Pursuant to this discussion § 197 assumed the form set out in this opinion; and it was explained in the House Committee Reports that the amendment in effect restored the existing law upon the subject.[8] We can draw no other conclusion than that Congress did not intend to authorize in the case of a completed robbery one penalty for the robbery itself and another for the assault with intent to rob, because the law existing at the time of the passage of the Criminal Code did not authorize such action.

From the above it appears that the sentence of twenty-five years imposed upon the defendant under the second count of the indictment was valid and that the five year sentence imposed under count 1 was invalid. There is no occasion to resentence the defendant; but the court should strike from the judgment the five year sentence imposed under count 1. The time already served by the defendant would then apply upon the twenty-five year sentence.

The cause will be remanded to the District Court with direction to strike from the judgment the five year sentence imposed under count 1.

Remanded with directions.

---

[2] § 19 of the Post Office Laws, Act of April 30, 1810, Ch. 37, 2 Stat. 598.

[3] R.S. §§ 5472, 5473.

[4] H.R. 11701; S.2982; 42 Cong. Rec. 539, 582; 43 Cong. Rec. 2649, 3218–19, 3596.

[5] 42 Cong. Rec. 975.

[6] 42 Cong. Rec. 975–6.

[7] 42 Cong. Rec. 976, 1906.

[8] H. Rep. No. 2770, 60th Cong., 2nd Sess. p. 6; H.Rep.No. 2319, 60th Cong., 2nd Sess., p. 7.