UNITED STATES of America, Appellee,

v.

Anthony Raymond MERCHANT,
Appellant.

No. 83–6213.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 8, 1983.
Decided March 30, 1984.

Samuel A. Flax, Washington, D.C. (Morgan, Lewis & Bockius, Washington, D.C., on brief), for appellant.

Richard S. Poe, Asst. U.S. Atty., Charlotte, N.C. (Charles R. Brewer, U.S. Atty., Asheville, N.C., on brief), for appellee.

Before PHILLIPS and SPROUSE, Circuit Judges, and HOFFMAN, Senior District Judge.*

SPROUSE, Circuit Judge:

Anthony Raymond Merchant appeals from the district court's denial of his motion to vacate consecutive five-year sentences he received for robbing a post office in Scarbro, West Virginia. Merchant pleaded guilty to one count of robbing a postal official of money and material belonging to the United States, 18 U.S.C. § 2114, and one count of stealing a postal money order machine, 18 U.S.C. § 500. He received the maximum five-year sentence possible under 18 U.S.C. § 500, but only half the ten-year sentence that could have been imposed under 18 U.S.C. § 2114—five years, to be served consecutively with that received for the section 500 conviction. He attacked the sentences collaterally by filing a motion to vacate pursuant to 28 U.S.C. § 2255, arguing that the consecutive prison terms he received for a single criminal episode violated the fifth amendment's double jeopardy clause. We affirm.

On the afternoon of May 13, 1981, Merchant entered the Scarbro, West Virginia post office on the pretext of mailing a large package. He found the postmistress alone and enlisted her assistance in taping and weighing the package. While she was distracted with these activities, Merchant jumped onto the counter and crawled headfirst through the service window separating the employees' work area from that part of the post office accessible to the general public. The postmistress first attempted to block his entry by pushing against his head as he advanced through the opening, but then fled the post office through the back door when her efforts failed. Merchant pilfered approximately $273 from the cash register, seized the money order machine and a number of blank forms, and escaped through the same back door used moments before by the postmistress.

Two weeks later, Merchant was arrested in North Carolina on a warrant charging him with the Scarbro post office robbery. He subsequently waived his right to a probable cause and identity hearing, and requested that his case be transferred to the Western District of North Carolina for the entry of his guilty plea. Fed.R.Crim.P. 20. His request was granted, and he was remanded to the custody of Mecklenburg County jail officials to await a plea hearing on the two-count West Virginia indictment charging him with (1) robbing the postmistress of United States property, 18 U.S.C. § 2114, and (2) stealing a postal money order machine, 18 U.S.C. § 500.

Merchant escaped after only three days in the Mecklenburg County jail. He was apprehended a week later, but not before passing several bogus money orders written on forms that he had taken from the Scarbro post office. Charges of escape and passing false money orders were added to those he already faced under the West Virginia indictment.

After negotiations with the government, Merchant entered a guilty plea in North Carolina federal district court to one count of robbing a postal official, one count of stealing a money order machine, one count of escape, and one count of passing false money orders. The government agreed to drop numerous other counts of passing false money orders and to recommend no more than a 20-year sentence, in exchange for the guilty plea. Merchant received five years for each of the two counts stemming from the robbery of the Scarbro post office and three years for each of the two North Carolina charges. All sentences were made consecutive.

Merchant's attorney immediately moved for a reduction of sentence on double jeop-

* Hon. Walter E. Hoffman, Senior District Judge, Eastern District of Virginia, sitting by designa-

tion.

ardy grounds, but the district court denied relief. No appeal from that decision was taken. Ten months into his prison term, Merchant, acting *pro se*, filed a 28 U.S.C. § 2255 petition in federal court, renewing his request for a reduced sentence. He again raised his double jeopardy claim, arguing that the consecutive sentences he received for the West Virginia robbery impermissibly punished him for the same offense. He did not challenge the consecutive three-year sentences imposed for his North Carolina convictions, but alleged generally that his plea was coerced and that his attorney was ineffective. The district court dismissed his petition on February 9, 1983. We granted Merchant a certificate of probable cause to appeal and appointed counsel to assist him in presenting his double jeopardy challenge to the consecutive five-year sentences.

## I

■ The double jeopardy clause of the fifth amendment protects three basic interests of the defendant. "[(1)] It protects against a second prosecution for the same offense after acquittal. [(2)] It protects against a second prosecution for the same offense after conviction. [(3)] And it protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969).

■ The double jeopardy prohibition against retrial, of course, applies with equal force against the judicial and legislative branches. Neither the judiciary nor the legislature possesses the power to hold or authorize a second trial on the same offense after a final resolution of the defendant's guilt or innocence has occurred. The double jeopardy protection against multiple punishments, however, serves as a much narrower restraint on government prerogatives. It prevents the courts from imposing a sentence that exceeds the legislative mandate, but it does not independently prohibit the legislature from authorizing cumulative punishments for the same offense under separate statutory schemes.

*Missouri v. Hunter*, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983); *Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981); *United States v. Wilson*, 721 F.2d 967, 971 (4th Cir.1983). In this respect, the double jeopardy clause does not protect against all multiple punishments—only legislatively unauthorized multiple punishments. *Id.*

■ "[T]he power to define criminal offenses and to prescribe the punishment to be imposed upon those found guilty of them ... resides wholly with Congress." *Whalen v. United States*, 445 U.S. 684, 689, 100 S.Ct. 1432, 1436, 63 L.Ed.2d 715 (1980). The double jeopardy clause, though a barrier to legislative attempts to authorize retrial after an acquittal or conviction, simply does not intrude on Congress's prerogatives in fashioning the statutory framework that will govern the courts' sentencing decisions. *See, e.g., Hunter, supra.* Its purpose in the punishment phase of the trial "is limited to assuring that the [sentencing] court does not exceed its legislative authorization by imposing multiple punishments for the same offense." *Albernaz*, 450 U.S. at 344, 101 S.Ct. at 1145 (quoting *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977)). When reviewing a defendant's claim that the sentence he received in a single criminal trial violates the double jeopardy clause, therefore, "the question of what punishments are constitutionally permissible is not different from the question of what punishments the Legislative Branch intended to impose." *Albernaz*, 450 U.S. at 344, 101 S.Ct. at 1145.

## II

The two statutes under which Merchant was convicted bear some indicia of a congressional judgment that a defendant who violates both provisions in the same criminal episode may be sentenced separately under each provision. The offenses are codified in different sections of the criminal code, they were enacted at different times, and they are designed to safeguard completely different interests—the focus of

section 2114 is plainly on protecting postal officials from physical assaults, whereas the expressed purpose of section 500 is to interrupt the illicit traffic in bogus money orders. *See* 1972 U.S.Code Cong. & Ad. News 3356–59. Standing alone, however, these indicia may not be sufficient to demonstrate an "obvious legislative intent to pyramid the penalties of section 500 and section 2114," *United States v. Crawford,* 576 F.2d 794, 800 (9th Cir.1978).

We are left, then, to determine whether consecutive punishments are authorized under sections 500 and 2114 by applying the *Blockburger*[1] rule of statutory construction:

> The test articulated in *Blockburger v. United States* ... serves a generally similar function of identifying congressional intent to impose separate sanctions for multiple offenses arising in the course of a single act or transaction. In determining whether separate punishment might be imposed, *Blockburger* requires that courts examine the offenses to ascertain "whether each provision requires proof of a fact which the other does not." .... [T]he court's application of the test focuses on the statutory elements of the offense. If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes.

*Iannelli v. United States,* 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 1293 n. 17, 43 L.Ed.2d 616 (1975). *See also Illinois v. Vitale,* 447 U.S. 410, 416, 100 S.Ct. 2260, 2265, 65 L.Ed.2d 228 (1980); *United States v. Wilson,* 721 F.2d at 971.

■ Section 2114 subjects any person who "robs [a postal official] of mail matter, or of any money, or other property of the United States" to a possible sentence of ten years' imprisonment. The sentence can be extended to twenty-five years if the defendant is a prior offender or causes actual bodily injury to the victim during the commission of the robbery. To prove the basic offense under section 2114, the government must show that the defendant (1) took property belonging to the United States (2) from a postal official, under whose care and custody the property was committed, (3) with the intent to commit a robbery.

■ Section 500, by comparison, imposes up to a five-year sentence and $5,000 fine on anyone who "steals ... [a] postal money order machine." The offense is established when the government proves that (1) a postal money order machine was stolen by (2) someone possessing the necessary criminal intent.

■ The statutory elements of an offense under section 500 differ from those of section 2114 in two critical respects. Section 500 requires proof that the specific item stolen was either a money order machine or some other "instrument ... used in preparing ... the blanks on postal money order forms." There is no like requirement for a conviction under section 2114—the stolen property under that provision may be a mailbag, a vehicle, or a host of other kinds of federal property. Moreover, section 500 proscribes the unlawful taking of a postal money order machine from any location, even an unattended government ware-house. A section 2114 offense, in contrast, requires proof that the stolen property was in the possession of a government employee at the time of the robbery.

In sum, these two statutes describe different offenses under the *Blockburger* test and, therefore, authorize the trial court to impose separate sentences for each distinct violation occurring within a single criminal transaction.[2] *See, e.g., Morgan v. Devine,*

---

**1.** *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

**2.** Merchant's reliance on *Costner v. United States,* 139 F.2d 429 (4th Cir.1943), is misplaced. In *Costner,* the defendant was charged with two counts of violating 18 U.S.C. § 320, the predecessor statute of 18 U.S.C. § 2114. One count charged the defendant with assaulting a postal official with the *intent* to commit a robbery, while the other charged him with assaulting the same official during the *commission* of the same robbery. We held that the trial court erred in imposing consecutive sentences for each offense charged in the indictment, because the proof of

237 U.S. 632, 35 S.Ct. 712, 59 L.Ed. 1153 (1915); *Steele v. United States,* 440 F.Supp. 266 (D.Neb.), *aff'd,* 565 F.2d 1058 (8th Cir.1977) (per curiam), *cert. denied,* 434 U.S. 1050, 98 S.Ct. 901, 54 L.Ed.2d 803 (1978). *But see United States v. Crawford,* 576 F.2d at 800.

The district court's order denying relief under 28 U.S.C. § 2255 is affirmed.

AFFIRMED.

the first count was completely subsumed within the proof offering for the second count. Here, in contrast, we not only deal with offenses proscribed in two separate statutory provisions, but the assault, which was a common feature of both counts of the indictment in *Costner,* is an element of the offense under only one of the involved statutes.