**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-6719**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

TERRON LAMAR BRYANT,

Defendant - Appellant.

Appeal from the United States District Court for the District of South Carolina, at Charleston. Patrick Michael Duffy, Senior District Judge. (2:09-cr-00796-PMD-1; 2:16-cv-01880-PMD)

Argued: October 29, 2019                          Decided: January 24, 2020

Before KING, FLOYD, and RUSHING, Circuit Judges.

Affirmed by published opinion. Judge Floyd wrote the opinion in which Judge King and Judge Rushing joined.

**ARGUED:** Emily Deck Harrill, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Columbia, South Carolina, for Appellant. Thomas Ernest Booth, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** John P. Cronan, Acting Assistant Attorney General, Matthew S. Miner, Deputy Assistant Attorney General, Criminal Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Beth Drake, Acting United States Attorney, Columbia, South Carolina, Nick Bianchi, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, South Carolina, for Appellee.

FLOYD, Circuit Judge:

In 2010, Terron Lamar Bryant was convicted for assaulting with intent to rob, steal, or purloin a postal employee and placing their life in jeopardy by use of a dangerous weapon, in violation of 18 U.S.C. § 2114(a), and for brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). The district court sentenced Bryant to 46 months on the § 2114(a) aggravated-assault charge (Count I), followed by 84 months for the § 924(c) violation (Count II). Bryant did not file a direct appeal. Instead, in 2016, he moved to vacate his § 924(c) conviction and sentence under 28 U.S.C. § 2255.[1] The district court denied Bryant's motion both initially and upon reconsideration, and this appeal followed. For the reasons set forth below, we hold that Bryant's § 2114(a) conviction constitutes a "crime of violence" under § 924(c)'s force clause. Therefore, we affirm the judgment of the district court.

---

[1] Bryant did so in light of the Supreme Court's decision in *Johnson v. United States* (*Johnson II*), 135 S. Ct. 2551 (2015), which invalidated the residual clause in the Armed Career Criminal Act's definition of violent felony, 18 U.S.C. § 924(e)(2)(B)(ii), on vagueness grounds. *See generally Welch v. United States*, 136 S. Ct. 1257 (2016) (holding that *Johnson II* applied retroactively in cases on collateral review). In his § 2255 motion, Bryant argued that the similarly worded residual clause in § 924(c)'s "crime of violence" definition was likewise unconstitutionally vague. The district court did not reach the constitutionality of that residual clause, however, because it concluded that the predicate offense fit within § 924(c)'s force clause. And, while Bryant's appeal was pending, the Supreme Court invalidated § 924(c)'s residual clause. *United States v. Davis*, 139 S. Ct. 2319, 2336 (2019). Thus, as discussed below, the parties agree that our analysis on appeal is limited to considering whether Bryant's § 2114(a) conviction qualifies as a crime of violence under § 924(c)'s force clause.

I.

We review de novo whether an offense qualifies as a crime of violence under § 924(c). *United States v. Mathis*, 932 F.3d 242, 263 (4th Cir. 2019). Section 924(c) provides that a person who "uses or carries" a firearm "during and in relation to any crime of violence," or who "possesses" a firearm "in furtherance of any such crime," may be separately convicted of both the underlying crime of violence and the use, carrying, or possession of that firearm. 18 U.S.C. § 924(c)(1)(A); *accord United States v. Walker*, 934 F.3d 375, 377 (4th Cir. 2019). A "crime of violence" is defined for such purposes as "an offense that is a felony" and:

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3).

"Courts refer to § 924(c)(3)(A) as the 'force clause' and to § 924(c)(3)(B) as the (now-invalid) 'residual clause.'" *Walker*, 934 F.3d at 377; *see also United States v. Davis*, 139 S. Ct. 2319, 2323–24, 2336 (2019) (invalidating residual clause as unconstitutionally vague). In light of *Davis*, which the Supreme Court decided while Bryant's appeal was pending before this Court, the parties now agree that Bryant's § 2114(a) conviction only qualifies as a crime of violence if it satisfies the force clause.

3

II.

To determine whether an offense qualifies as a crime of violence under the force clause of § 924(c)(3)(A), "we apply the categorical approach or the modified categorical approach, depending on the nature of the offense." *Mathis*, 932 F.3d at 264; *accord Descamps v. United States*, 570 U.S. 254, 257 (2013).

We must apply the categorical approach when the predicate statute "sets out a single (or 'indivisible') set of elements to define a single crime." *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016). Under this approach, we focus on "the *elements* of the prior offense rather than the *conduct* underlying the conviction," *United States v. Cabrera-Umanzor*, 728 F.3d 347, 350 (4th Cir. 2013), and ask whether those elements "necessarily require the use, attempted use, or threatened use of physical force," *United States v. Simms*, 914 F.3d 229, 233 (4th Cir. 2019). If the "minimum conduct necessary" to sustain a conviction under the predicate statute does not require the use, attempted use, or threatened use of force, *see Castillo v. Holder*, 776 F.3d 262, 267 (4th Cir. 2015), then the offense "is not 'categorically' a crime of violence under the force clause." *Walker*, 934 F.3d at 378 (quoting *Simms*, 914 F.3d at 233). In undertaking this inquiry, however, we must ensure that there is a "realistic probability," rather than a "theoretical possibility," that the minimum conduct would actually be punished under the statute. *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013) (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)).

The "modified" categorical approach is simply "a tool for implementing the categorical approach." *Descamps*, 570 U.S. at 262; *see also Mathis*, 136 S. Ct. at 2249 (describing modified categorical approach as aid for determining "what crime, with what

4

elements, a defendant was convicted of"). We apply this approach in the "'narrow range of cases'" involving a "divisible" statute. *Descamps*, 570 U.S. at 261 (quoting *Taylor v. United States*, 495 U.S. 575, 602 (1990)).

A divisible statute is one that lists "potential offense *elements* in the alternative," and thus includes "multiple, alternative versions of the crime." *Id.* at 260, 262 (emphasis added). A statute that merely lists alternative means of committing a crime is not divisible. *Mathis*, 136 S. Ct. at 2249; *see also Omargharib v. Holder*, 775 F.3d 192, 198 (4th Cir. 2014) ("[A] crime is divisible under *Descamps* only if it is defined to include multiple alternative *elements* (thus creating multiple versions of a crime), as opposed to multiple alternative *means* (of committing the same crime). Elements, as distinguished from means, are factual circumstances of the offense the jury must find unanimously and beyond a reasonable doubt." (citations and internal quotation marks omitted)).

If a court determines that the underlying statute is divisible, and that application of the modified categorical approach is therefore appropriate, then it may examine a limited set of documents, such as "the indictment, jury instructions, or plea agreement and colloquy," *Mathis*, 136 S. Ct. at 2249, for the sole purpose of determining "which of the statute's alternative elements formed the basis of the defendant's prior conviction," *Descamps*, 570 U.S. at 262. And once a court has isolated the specific crime of conviction, it must apply the traditional categorical approach outlined above to determine whether that crime constitutes a "crime of violence" under § 924(c)'s force clause. *See Mathis*, 136 S. Ct. at 2249, 2256; *cf. Mathis*, 932 F.3d at 265 & n.23.

5

III.

With this framework in mind, we turn to consider whether Bryant's § 2114(a) conviction constitutes a crime of violence under § 924(c)'s force clause. If so, we must affirm the district court's denial of Bryant's § 2255 motion collaterally attacking his § 924(c) conviction and sentence.

As noted, the predicate statute in this case is 18 U.S.C. § 2114. Section 2114 is located within the "Robbery and Burglary" chapter of the federal criminal code and is titled "Mail, money, or other property of United States." Bryant was charged under paragraph (a) of this section, which reads:

> **(a) Assault.**—A person who assaults any person having lawful charge, control, or custody of any mail matter or of any money or other property of the United States, with intent to rob, steal, or purloin such mail matter, money, or other property of the United States, or robs or attempts to rob any such person of mail matter, or of any money, or other property of the United States, shall, for the first offense, be imprisoned not more than ten years; and if in effecting or attempting to effect such robbery he wounds the person having custody of such mail, money, or other property of the United States, or puts his life in jeopardy by the use of a dangerous weapon, or for a subsequent offense, shall be imprisoned not more than twenty-five years.

18 U.S.C. § 2114(a).

At the outset, the parties agree that § 2114(a) is divisible into at least two parts: a basic version of the crime in the first clause (before the semicolon) and an aggravated version of the crime with an enhanced maximum penalty in the second clause (after the semicolon). *Accord Knight v. United States*, 936 F.3d 495, 498–99 (6th Cir. 2019); *United States v. Enoch*, 865 F.3d 575, 580–81 (7th Cir. 2017). Instead, they dispute whether the aggravated version of the crime (that is, the additional "wounding" and "life in jeopardy

6

by the use of a dangerous weapon" elements in the second clause) applies only to the robbery and attempted robbery offenses listed in the first clause, and not to assault.

In the government's view, the aggravated version of the crime is not so limited, and Bryant's offense of conviction is appropriately characterized as "life-in-jeopardy assault" under § 2114(a). *See* Appellee's Br. 2. But Bryant avers that the second clause of the statute cannot apply to "assault with intent to rob" convictions. *See* Appellant's Br. 22.[2] In essence, Bryant claims that there is no such thing as "life-in-jeopardy assault," even though both the indictment and his plea agreement explicitly state that he put the victim's life in jeopardy by using a dangerous weapon. His logic goes something like this: The first clause outlines two categories of offenses—(1) assault with intent to rob, steal, or purloin, and (2) robbery and attempted robbery—and the second clause creates a separate, aggravated offense for the latter category, i.e., the robbery offenses. That is so, Bryant says, because the second clause only imposes an enhanced penalty if, "in effecting or attempting to effect *such robbery*," the offender wounds the postal worker or puts their life in jeopardy by use of a dangerous weapon. 18 U.S.C. § 2114(a) (emphasis added). Put differently, because Congress *included* assault before the semicolon and *excluded* it after the semicolon, these two provisions stand independently, and the enhanced penalty therefore only applies to the robbery offenses—not assault. *See, e.g.*, Eric Wm. Ruschky,

---

[2] Despite Bryant's characterization of his conviction as an assault-with-intent-to-rob conviction in his briefs, his counsel repeatedly emphasized at oral argument that the assault offense listed in the first clause of the statute—that is, an assault with the intent to "rob, *steal, or purloin*"—is indivisible. Because we ultimately reject Bryant's argument that the second clause only applies to the robbery offenses, we need not reach the divisibility of the first clause in this appeal.

*Pattern Jury Instructions for Federal Criminal Cases: District of South Carolina* 541–43 (2019 online ed.) (including enhanced penalty for § 2114(a) robbery, but not assault, in pattern instructions for district in which Bryant convicted).

To be sure, Bryant's proposed construction of § 2114(a) has some initial appeal: When interpreting a statute, we always begin with its text, *see United States v. Abdelshafi*, 592 F.3d 602, 607 (4th Cir. 2010), accounting for its plain language as well as its punctuation and structure, *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 455 (1993). Critically, however, we do not analyze the text and structure of § 2114(a) in a vacuum. *See Abramski v. United States*, 573 U.S. 169, 179 (2014). Rather, we must interpret the statute with reference to its history and purpose as well. *See id.*; *see also Gundy v. United States*, 139 S. Ct. 2116, 2126 (2019) ("[B]eyond context and structure, [courts] often look[] to 'history [and] purpose' to divine the meaning of language." (fourth alteration in original) (quoting *Maracich v. Spears*, 570 U.S. 48, 76 (2013))); *U.S. Nat'l Bank of Or.*, 508 U.S. at 455 (emphasizing that statutory interpretation is a "holistic endeavor").

Applying these familiar tools of construction here, we conclude that § 2114(a) does not limit its enhanced penalty to the robbery offenses. Though the deployment of a semicolon and the omission of the word "assault" in the second clause point in one direction, "all of the other evidence from the statute points the other way," *see U.S. Nat'l Bank of Or.*, 508 U.S. at 455. Indeed, a brief review of the statute's history clarifies that the "attempting to effect such robbery" language in the second clause refers to both the attempted robbery *and* assault offenses in the first clause, because that language in fact

8

antedated any express mention of "attempted robbery" in the statute. Moreover, this reading fully comports with the plain and ordinary meaning of the words used in the statute: As we explain below, a person who assaults a postal employee with the intent to rob is clearly attempting to rob that employee.

A.

Section 2114(a) is "derived from a statute of considerable age," *United States v. Spears*, 449 F.2d 946, 950 (D.C. Cir. 1971), that "had its genesis as a law to protect mail carriers from assault and robbery of mail matter," *Garcia v. United States*, 469 U.S. 70, 75 (1984). In 1792, in an enactment titled "An Act to establish Post-Office and the Post Roads within the United States," the Second Congress made robbery of the mail from a carrier an offense punishable by death.[3]

Several years later, in 1799, "an *attempt* amounting to an unconsummated robbery of a mail carrier was made punishable by imprisonment for not more than two years." *Spears*, 449 F.2d at 951; *see also* Act of Mar. 2, 1799, ch. 43, § 15, 1 Stat. 733, 736 ("And if any person shall attempt to rob the mail of the United States, by falling upon the person having custody thereof, shooting at him or his horses, or threatening him with dangerous weapons, and the robbery is not effected, every such offender . . . shall be punished by whipping, . . . or with imprisonment, not exceeding two years, or with both . . . ."). At the

---

[3] Act of Feb. 20, 1792, ch. 7, § 17, 1 Stat. 232, 237. That penalty remained the same when the Third Congress passed the Act of May 8, 1794, ch. 23, § 17, 1 Stat. 354, 361. In 1797, aiders and abettors of robbery of a mail carrier were subjected to the same punishment. Act of Mar. 3, 1797, ch. 19, § 4, 1 Stat. 509, 511.

same time, Congress reduced the penalty for simple robbery of a mail carrier to public whipping and a ten-year maximum imprisonment term for a first offense; for subsequent robbery offenses, and for wounding or placing the life of the carrier in jeopardy by use of a dangerous weapon during the commission of a robbery, however, the death penalty remained statutorily authorized. *See Spears*, 449 F.2d at 951; 1 Stat. at 736.

In subsequent years, Congress repeatedly enacted special legislation dealing with robbery and attempted robbery of a mail carrier. But the substance of these offenses remained the same. Relevantly, in 1810, Congress introduced the term "assaulting" for the first time into the mail robbery statute; at that time, it was enumerated as a means of attempting to rob a mail carrier. *See* Act of Apr. 30, 1810, ch. 37, § 19, 2 Stat. 592, 598 (replacing the 1799 Act's "falling upon the person having custody thereof" language, 1 Stat. at 736, with "assaulting the person having custody thereof"). And in 1872, after undergoing several amendments related to punishment,[4] the unitary statute outlining both the robbery and attempted robbery offenses was split into two separate statutes. *See* Act of June 8, 1872, ch. 335, §§ 285, 287, 17 Stat. 283, 320. The Revised Statutes of 1878—a precursor to the United States Code—contained these two provisions, as renumbered,

---

[4] In 1810, the maximum punishment for attempted robbery was increased from two to three years' imprisonment. *See* 2 Stat. at 598. In 1825, the punishment for simple robbery was amended to 5–10 years, and the punishment for attempted robbery was amended to 2–10 years. Act of Mar. 3, 1825, ch. 64, § 22, 4 Stat. 102, 108–109. In 1872, the death penalty for aggravated robbery had been eliminated and replaced with life imprisonment. *See* Act of June 8, 1872, ch. 335, §§ 285, 287, 17 Stat. 283, 320.

which were titled "robbery of the mail" and "attempting to rob the mail," respectively. Rev. Stat. §§ 5472, 5473 (2d ed. 1878).

Congress codified, revised, and amended the United States penal code in 1909. When it did so, it combined the robbery and attempted robbery provisions into a single section titled "Offenses Against Postal Service." *Garcia*, 469 U.S. at 81–82 nn.8–9 (Stevens, J., dissenting). Initially, the joint committee of Congress charged with drafting the recodification eliminated any mention of the use of a dangerous weapon or placing the life of the carrier in jeopardy, and it established a single 25-year penalty for subsequent offenses:

> This section is made up of two sections of the Revised Statutes. Under those sections, one committing robbery of the mails, or attempting to do so, and in doing or attempting to do which makes use of a dangerous weapon, is subject to imprisonment for life. This language has been omitted and the maximum imprisonment which may be imposed has been reduced to twenty-five years.

S. Rep. No. 60-10, pt. 1, at 21 (1908); *see also Spears*, 449 F.2d at 952 n.36 (noting that S. 2982, as originally drafted, subjected assault with intent to rob, steal, or purloin and robbery to a 10-year maximum and subsequent offenses to a 25-year maximum (citing 42 Cong. Rec. 1975 (1908))). But these changes were unsatisfactory to some members, who sought to preserve the "different grades of the offenses" and to retain "emphasis upon the fact that a higher grade should have a higher punishment." *Costner v. United States*, 139 F.2d 429, 433 (4th Cir. 1943); *see also* 42 Cong. Rec. 975–976. Thus, the bill was eventually redrafted to the form in which it passed both houses, *Spears*, 449 F.2d at 953, which read

11

essentially the same as § 2114(a) does now (absent the explicit reference to attempted robbery in the first clause of the statute):

> Whoever shall assault any person having lawful charge, control, or custody of any mail matter, with intent to rob, steal, or purloin such mail matter or any part thereof, or shall rob any such person of such mail or any part thereof, shall, for a first offense, be imprisoned for not more than ten years; and if in effecting or attempting to effect such robbery, he shall wound the person having custody of the mail, or put his life in jeopardy by the use of a dangerous weapon, or for a subsequent offense, shall be imprisoned twenty-five years.

Act of Mar. 4, 1909, Pub. L. No. 60-350, ch. 321, § 197, 35 Stat. 1909, 1126; *accord* 18 U.S.C. § 320 (1934 ed., Supp. V) (predecessor to 18 U.S.C. § 2114(a)).[5]

At least in 1909, then, it appears that the "attempting to effect such robbery" language in the second clause of the statute referred back to the "assault with intent to rob, steal, or purloin" mentioned in the first clause, as there was *no attempted robbery offense* listed in the first clause at that time.

This conclusion is bolstered by case law interpreting § 2114(a) and its predecessor prior to 1994, when, as we next explain, the statute was amended to add attempted robbery to the list of basic offenses in the first clause. Take, for instance, *United States v. Spain*,

---

[5] In 1935, Congress broadened 18 U.S.C. § 320, "the forerunner to § 2114," to include money and property of the United States within its reach. *See Garcia*, 469 U.S. at 75–76. In 1948, "minor changes in phraseology" were made as part of a revision and codification of federal law relating to crimes and criminal procedure, *Spears*, 449 F.2d at 954 (citing Act of June 25, 1948, ch. 645, 62 Stat. 683), and § 320 was redesignated as § 2114, *see* 62 Stat. at 797; H.R. Rep. No. 80-304, at A135 (1947). In 1984, the mandatory 25-year sentence simply became the maximum punishment. *See* Act of Oct. 12, 1984, Pub. L. No. 98-473, tit. II, § 223(d), 98 Stat. 1837, 2028 (to be codified at 18 U.S.C. § 2114). Finally, in 1994, Congress amended § 2114(a) to add attempted robbery as a basic offense in the first clause, as discussed in further detail below.

12

32 F. Supp. 28 (E.D. Ill. 1940). In that case, the district court assumed that attempted robbery was subsumed within an assault with intent to rob charge under § 2114(a)'s predecessor, at least for purposes of subjecting the assault offense to the enhanced penalties triggered by the "attempting to effect such robbery" language in the second clause. *See id.* at 30 (rejecting challenge to an indictment alleging life-in-jeopardy assault based on the failure to aver attempted robbery as an essential fact, because it was "perfectly obvious that any assault with intent to rob is an attempt to effect a robbery, and is therefore, within the language of the statute"); *see also id.* ("It may well be urged that an attempt to rob is not an assault, but it does not follow that a felonious assault with intent to rob is not an attempt to rob."); *cf. United States v. Smith*, 553 F.2d 1239, 1240 (10th Cir. 1977) (refusing to read broader offense of attempted robbery into the *first* clause of § 2114(a) before the 1994 amendment, because an "assault with intent to rob is more than an attempt to rob" (quoting *Spain*, 32 F. Supp. at 30)), *overruled on other grounds by United States v. Prentiss*, 256 F.3d 971 (10th Cir. 2001).

The D.C. Circuit's opinion in the double-jeopardy context in *Spears* is also instructive. There, the court held that "the part of 18 U.S.C. § 2114 prohibiting assaults," including life-in-jeopardy assault for which the defendant was convicted, "was intended by Congress to prohibit certain kinds of attempts to rob"; thus, it could not support an independent conviction for robbery, even under D.C. law, since robbery was "the same

13

crime" the defendant was charged with attempting. *Spears*, 449 F.2d at 954–55. In so

holding, the court explained:

> The derivation, codification, revision and explanation of what is now 18
> U.S.C. § 2114(a) thus all clearly indicate that the assault proscribed by that
> section is an assault which forms an integral part of an unsuccessful attempt
> to rob a mail carrier. . . .
> . . . .
> . . . [I]t also appears that placing the life of a mail carrier in jeopardy is not
> itself an independent crime under 18 U.S.C. § 2114(a), but is an integral part
> of either the robbery *or the assault in connection with the attempted robbery*
> which the section proscribes.

*Id.* at 954 (emphasis added); *see also Garcia*, 469 U.S. at 79 n.5 (describing § 2114(a),

before 1994 amendment, as a statute protecting authorized custodians "against assaults

accompanying both attempted and completed robberies").[6]

---

[6] Other pre-1994 cases addressing double-jeopardy challenges, including our own, are in accord. For example, in holding that simple assault and aggravated robbery under § 2114(a)'s predecessor stated but one offense for which only one sentence could be imposed in *Costner*, this Court rejected as "too unreasonable to be seriously entertained" the notion that "even in an extreme case Congress intended to authorize two punishments for the same unlawful conduct, that is, ten years for the assault with intent to rob, and ten years for the robbery." 139 F.2d at 431. And, notably, we stated that "the same observation" would apply "if the *assault with intent* or the completed robbery" were "aggravated by wounding or putting the life of the custodian in jeopardy by dangerous weapons, for which a maximum penalty of twenty-five years is provided." *Id.* (emphases added); *accord Brooks v. United States*, 223 F.2d 393, 394 & n.2 (10th Cir. 1955) (following *Costner* and citing several other circuit cases that reached the "same result"); *see also id.* at 394 (noting that *Costner*'s interpretation was further supported by the enhancement for subsequent offenses in the second clause, which demonstrated that Congress intended to impose a more severe penalty "where a second robbery or [a second] *attempted robbery by simple assault* was committed" (emphasis added)).

14

Furthermore, nothing in Congress's 1994 amendment of § 2114(a) suggests that Congress wanted to alter courts' historical understanding of the statute. Congress added "attempts to rob" after "robs" in the first clause of § 2114(a) as part of the Violent Crime Control and Law Enforcement Act of 1994, thereby making attempted robbery—like robbery and assault with intent to rob, steal, or purloin—a basic offense under the first clause of the statute. *See* Pub. L. No. 103-322, § 320903(a)(3), 108 Stat. 1796, 2124. But neither the legislative history nor purpose of the Act[7] suggests that Congress did so because it no longer intended the "attempting to effect such robbery" language in the second clause to refer back to the assault offense.

Admittedly, it is this amendment that creates the parallel reference to robbery and attempted robbery in the first clause of the statute, and "effecting or attempting to effect such robbery" in the second clause of the statute. And this parallelism is precisely why we find Bryant's textual argument to have some appeal in the first place. But in light of the foregoing history, we simply cannot conclude that the amendment evinces any intent on the part of Congress to eliminate life-in-jeopardy assault under § 2114(a). Although Congress certainly could have been clearer by adding "assault" language after the semicolon, as Bryant contends it was required to do in order for the government's argument to work, Congress's failure to do so seems to us to be less of an intentional effort to substantively amend a statute that had been on the books for nearly a century and more

---

[7] The Act is considered the largest crime bill in the history of the United States. The amendment to § 2114(a) was included among other miscellaneous amendments to various federal criminal statutes. *See* Pub. L. No. 103-322, tit. XXXII ("Miscellaneous"), subtit. I ("Other Provisions").

15

about the nature of the amendment itself—which targeted various federal criminal statutes for the inclusion of attempt crimes as part of a broader effort "[t]o eliminate inconsistencies and gaps in coverage." 108 Stat. at 2124 (amending robbery and burglary statutes, including § 2114, as well as kidnapping, smuggling, and property damage offenses).[8]

---

[8] If anything, then, the Act was meant to broaden the scope of the statute, not narrow it. Moreover, although we do not find reference in the amendment's legislative history to any particular inconsistencies or gaps in coverage that Congress aimed to clarify or fill, it is worth noting that, before 1994, several courts of appeals had refused to read the first clause of the statute "to proscribe *all* attempted robberies." *Smith*, 553 F.2d at 1240 (emphasis added) ("Congress, in subjecting what is now section 2114 to review and 'stylistic revision' on at least ten separate occasions since its original enactment in 1792, would [not] have overlooked the simple expedient of substituting the phrase 'attempt to rob' for 'assault with intent to rob' had it intended to proscribe all attempted robberies of persons having custody of the mails." (footnote omitted)); *see also Aderhold v. Schiltz*, 73 F.2d 381, 381 (5th Cir. 1934) (holding that indictment alleging attempt to rob postal clerk under § 2114(a)'s predecessor did not charge an existing offense under federal law because attempted robbery and assault with intent to rob are not "synonymous").

B.

More importantly, reading the second clause of § 2114(a) to apply to an assault with intent to rob is not unnatural to begin with: "A person who assaults any person having lawful charge, control, or custody of any mail matter or of any money or other property of the United States, *with intent to rob*, steal, or purloin" is plainly "attempting to effect such robbery." 18 U.S.C. § 2114(a) (emphasis added). As discussed, an assault with intent to rob is "more than an attempt to rob." *Spain*, 32 F. Supp. at 30. "It includes an attempt to rob and in addition all the essentials of an assault." *Id.*; *see also Spears*, 449 F.2d at 954 n.43 (noting that not *all* attempts to rob a mail carrier were covered under pre-1994 version of § 2114(a); "only those [attempts] which involve[d] assaults" were proscribed). Thus, we are satisfied that the "attempting to effect such robbery" language continues to refer back to an assault with intent to rob.[9]

---

[9] Accordingly, although Bryant is correct that "it is rare that legislative history or statutory policies will support a construction of a [criminal] statute broader than that clearly warranted by the text" because such construction "must be guided by the need for fair warning," *Crandon v. United States*, 494 U.S. 152, 160 (1990), there is no reason to think that the fundamental due process concerns underlying the rule of lenity are implicated here. The statute's history simply resolves any uncertainty or ambiguity that might otherwise exist. *See United States v. Castleman*, 572 U.S. 157, 172–73 (2014) (holding that rule of lenity only applies "if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute, such that the Court must simply guess as to what Congress intended" (quoting *Barber v. Thomas*, 560 U.S. 474, 488 (2010))); *see also Maracich v. Spears*, 570 U.S. 48, 76 (2013) ("Only where 'the language or history of [the statute] is uncertain' . . . does the rule of lenity serve to give further guidance." (alteration in original) (quoting *Crandon*, 494 U.S. at 160)); *United States v. Granderson*, 511 U.S. 39, 54 (1994) (resolving ambiguity in defendant's favor where "text, structure, *and* history" all failed to establish that the government's position was "unambiguously correct" (emphasis added)).

IV.

Because we hold that the second clause of § 2114(a) does not apply exclusively to robbery and attempted robbery offenses, the question in this case is not whether an assault with intent to rob, steal, or purloin is a crime of violence under the force clause, as Bryant contends. Instead, the question is whether the additional life-in-jeopardy-with-a-dangerous-weapon element transforms such an assault into a crime of violence under the force clause.[10]

---

[10] To be clear, we do not intend to suggest that the second clause, let alone the first clause, *see supra* note 2, is further divisible based on the type of offense charged (i.e., robbery, attempted robbery, or assault). Because we conclude that assaults may fall within the ambit of the second clause and the enhanced penalty it imposes, we have no occasion to decide whether the first clause is divisible. And because we find that the additional life-in-jeopardy-with-a-dangerous-weapon element that warrants the enhancement is capable of transforming any of the basic offenses enumerated in the first clause, including assault, into a crime of violence, the potential divisibility of the aggravated offense set forth in the second clause is irrelevant to our analysis. Indeed, in *Knight*, the Sixth Circuit characterized the aggravated offense as the "aggravated puts-the-victim's-life-in-jeopardy-by-the-use-of-a-dangerous-weapon offense." 936 F.3d at 500. Though the defendant in that case was charged with both aggravated robbery and assault under § 2114(a), the court separately addressed the defendant's arguments as to why aggravated *assault* did not satisfy the physical force requirement, as discussed in greater detail below. We do the same here in addressing Bryant's arguments, which appear to be premised on the notion that aggravated assault is the least culpable conduct capable of securing a conviction under § 2114(a)'s second clause.

18

We hold that it does. Again, to satisfy the force clause, the predicate offense must be a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). The term "physical force" means "violent force," that is, force "capable of causing physical pain or injury to another person." *United States v. Evans*, 848 F.3d 242, 245 (4th Cir. 2017) (quoting *Johnson v. United States* (*Johnson I*), 559 U.S. 133, 140 (2010)). In this case, we join those circuits that have held that § 2114(a)'s requirement that the defendant use a dangerous weapon to put the victim's life in jeopardy "ensures that at least the threat of physical force is present." *Knight*, 936 F.3d at 500; *accord Enoch*, 865 F.3d at 581 (noting, albeit in case where defendant was only charged with aggravated robbery under § 2114(a), that "putting the life of a victim in jeopardy" is undoubtedly a "violent crime").[11]

Although "assault" under § 2114(a) is not statutorily defined, "courts have uniformly recognized that various federal statutes criminalizing 'assault' incorporate the long-established common law definition of that term." *United States v. Passaro*, 577 F.3d 207, 217–18 (4th Cir. 2009). "At common law, an assault is committed when a person willfully attempts to inflict injury on another, or threatens to inflict injury on another,

---

[11] The Eleventh Circuit reached a similar conclusion in the aggravated assault context in *In re Watt*, holding that the offense satisfied the force clause because, "[b]ased on the allegations in [the] indictment, the jury had to have found that [the defendant] 'assault[ed]' the victim and that [the victim's] 'life was put in jeopardy.'" 829 F.3d 1287, 1290 (11th Cir. 2016) (fourth alteration in original). But in *Watt*, the court proceeded to discuss the underlying facts, and it is unclear whether this discussion impacted its decision. *See id.* Thus, we do not rely on *Watt* here. *See generally Evans*, 848 F.3d at 245–46 ("Under the categorical approach, we analyze only the elements of the offense in question, rather than the specific means by which the defendant committed the crime.").

19

coupled with an apparent present ability to do so, causing a reasonable apprehension of immediate bodily harm." *United States v. Bird*, 409 F. App'x 681, 686–87 (4th Cir. 2011) (citing *United States v. Dupree*, 544 F.2d 1050, 1051 (9th Cir. 1976); and *United States v. Bell*, 505 F.2d 539, 540 (7th Cir. 1974)); *see also Knight*, 936 F.3d at 500 (applying same common-law definition of assault in § 2114(a) context before concluding that "[b]oth assault and robbery require at least some force or threatened use of force").

Because assault requires at least *some* use or threatened use of force, we agree with the Sixth Circuit that the "use of a dangerous weapon to put the victim's life in jeopardy transforms the force into violent physical force." *Knight*, 936 F.3d at 500 (rejecting defendant's argument that assault can result from a mere offensive touching, and thus without requisite physical force, as "ignor[ing] the additional element that the defendant put the postal employee's life in danger by use of a dangerous weapon").[12] Indeed, in

---

[12] Although not dispositive to our analysis, we also note that courts have reached similar conclusions in interpreting other assault statutes. *See United States v. Taylor*, 848 F.3d 476, 494 (1st Cir. 2017) (holding that even if simple assault against a federal officer under 18 U.S.C. § 111(a) does not require violent force, the "enhanced version" of the crime in § 111(b), which contains a similar dangerous-weapon element, necessarily involves such force); *United States v. Rafidi*, 829 F.3d 437, 443–46 (6th Cir. 2016) (same); *United States v. Lewis*, 724 F. App'x 269, 270 (4th Cir. 2018) (citing *Taylor* and *Rafidi* in finding no plain error in using § 111(b) as predicate offense for § 924(c) conviction); *United States v. Johnson*, 899 F.3d 191, 203–04 (3d Cir. 2018) (emphasizing that the defendant was charged with *armed* bank robbery under 18 U.S.C. § 2113(d), not unarmed bank robbery under § 2113(a), and holding that "'assault[ing]' someone or putting a life in 'jeopardy . . . by the use of a dangerous weapon'" under § 2113(d) categorically satisfies force clause (alteration in original)); *United States v. Verwiebe*, 874 F.3d 258, 261 (6th Cir. 2017) (holding that 18 U.S.C. § 113(a)(3), which criminalizes assault with a dangerous weapon with intent to do bodily harm, "involves violent force because it proscribes common law assault with a dangerous weapon, not simple common law assault"); *cf. United States v. Brown*, 892 F.3d 385, 403 (D.C. Cir. 2018) (noting, in context of (Continued)

20

*Johnson I*, the Supreme Court "quoted approvingly of a definition of a violent felony as '[a] crime characterized by extreme physical force, such as murder, forcible rape, and *assault and battery with a dangerous weapon*." *In re Irby*, 858 F.3d 231, 236 (4th Cir. 2017) (alteration in original) (emphasis added) (quoting *Johnson I*, 559 U.S. at 140–41).

Bryant's only rejoinder to this conclusion is premised on our 1995 decision in *United States v. Sturgis*, 48 F.3d 784 (4th Cir. 1995). Bryant describes *Sturgis* as a case in which an individual who was HIV-positive "spit and bit" correctional officers during a prison visit, rendering his "teeth and saliva" a dangerous weapon under what is now 18 U.S.C. § 113(a)(3) (assault with a dangerous weapon). *See* Oral Arg. 9:30–10:00. In Bryant's view, *Sturgis* demonstrates that there is more than a "theoretical possibility" that § 113(a)(3)—and by extension aggravated assault under § 2114(a)—encompasses a battery committed by "spitting on [someone] and being HIV-positive," which "should not qualify . . . [as] a crime of violence." *See id.* 10:05–10:27. Accordingly, Bryant asserts that even the aggravated version of § 2114(a) is categorically overbroad. *See id.* 10:27–10:32.

We have little trouble rejecting this argument. Suffice it to say, Bryant reads far too much into *Sturgis*. For one thing, *Sturgis* found the "test of whether a particular object was used as a dangerous weapon" to be a functional one: did the defendant use the object in question (or, in that case, body part in question) "to cause death or serious injury"? 48 F.3d at 788. By definition, then, a defendant cannot be convicted of assault with a "dangerous

characterizing D.C. attempted assault with a dangerous weapon as a crime of violence, that "[a]ssault is an offense against an individual, and adding a dangerous weapon into the mix makes the crime an inherently violent one" because "[u]se of that weapon as part of the crime materially increases the risk that violence will ensue").

weapon" under *Sturgis* without the use or threatened use of the type of force that satisfies *Johnson I*. *See Evans*, 848 F.3d at 245 (force must be "capable of causing physical pain or injury to another person" (quoting *Johnson I*, 559 U.S. at 140)).

More importantly, though, Bryant misreads the holding of *Sturgis*. In that case, we held that "a jury could reasonably have concluded that [the defendant's] use of his teeth to inflict potentially lethal bite wounds amounted to use of dangerous weapon." *Sturgis*, 48 F.3d at 788. But in doing so, we relied in pertinent part on the following circumstances, which—standing alone—were sufficient to support the jury's determination that the defendant's teeth qualified as a dangerous weapon: (1) the defendant "aggressively" bit the correctional officers as they attempted to restrain him; (2) "testimony indicated that he held the bites for at least four or five seconds"; and (3) the "bites inflicted serious wounds which bled profusely, necessitating medical attention." *See id.* at 788–89; *see also id.* at 789 ("In sum, the jury could have found that the wounds inflicted by Sturgis' teeth were in essence indistinguishable from punctures cause by a knife or ice pick.").[13] Thus, our conclusion that the aggravated offense stated in § 2114(a) is categorically a crime of violence is not altered by *Sturgis*.

---

[13] Although the Court also briefly mentioned the defendant's HIV-positive status in this section of its opinion, it only did so in order to emphasize that, at least at that time, "Sturgis' attack may not only have inflicted serious injury on the officers but endangered their lives as well." *Id.* at 789. Thus, without commenting on the scientific validity of our 1995 finding that "there is at least a substantial possibility that HIV, which causes AIDS, can be transmitted via a human bite," *id.* at 789, we note that the defendant's HIV-positive status was not determinative in that case. *See id.* at 788 (noting that the dangerous-weapon element turns on whether the object in question is used to "cause death *or* serious injury," e.g., the "serious wounds" inflicted by the defendant's aggressive biting (emphasis added)).

22

V.

For the foregoing reasons, we conclude that the aggravated offense contained in the second clause of § 2114(a) may apply to any of the basic offenses listed in the first clause of the statute, including assault with intent to rob, steal, or purloin. We further conclude that the aggravated offense contained in § 2114(a), which requires that the defendant wound or put the victim's life in jeopardy by use of a dangerous weapon during the commission of the basic offense, is categorically a crime of violence under the force clause of § 924(c)(3)(A). Accordingly, we affirm Bryant's conviction and sentence under § 924(c)(1).

*AFFIRMED*