# United States Court of Appeals
### For the Eighth Circuit

_____

No. 13-3481

_____

United States of America

*Plaintiff - Appellee*

v.

Christopher Sean Daniels

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: October 9, 2014
Filed: December 30, 2014

_____

Before COLLOTON, BRIGHT, and SHEPHERD, Circuit Judges.

_____

BRIGHT, Circuit Judge.

Christopher Daniels was convicted by jury of one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g) and 924(e). At sentencing, the district court[1] determined that Daniels had committed the necessary

_____

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

predicate offenses under the Armed Career Criminal Act, 18 U.S.C. § 924(e) ("ACCA"), which subjected him to a fifteen-year mandatory minimum sentence. The district court calculated a Guidelines advisory range of 262 to 327 months and imposed a sentence of 204 months (17 years) in prison. On appeal, Daniels argues that the district court erred by (1) failing to suppress statements he gave to law enforcement; (2) failing to reopen the suppression hearing in light of new evidence; (3) applying the ACCA in violation of his Sixth Amendment rights; and (4) imposing a substantively unreasonable sentence. Having jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm.

## I.    Background

On October 1, 2012, Daniels was indicted on one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g) and 924(e).

At trial, the testimony of A.C. illuminated the facts surrounding the underlying offense. A.C. testified that on the evening of September 3, 2012, she observed a group of individuals gathered on the stoop of her apartment building, including Daniels and his girlfriend, Jamillia Hudson. A.C. left for the convenience store and when she returned, she learned that there had been an altercation between certain members of the group. As a neighbor was explaining to A.C. what had happened, Daniels and Hudson pulled up to the apartment building in a grey Grand Prix and approached A.C. in a heated manner demanding to know the whereabouts of certain individuals. Despite A.C's attempts to explain that she had been gone during the prior altercation, Daniels brandished a handgun, put it to A.C.'s face, and told her that he'd "blow [her] motherfucking face off." A.C's brother overheard the commotion and approached. Daniels turned and fired a shot in his direction before returning to the Grand Prix with Hudson and fleeing the scene.

After responding to the incident and interviewing A.C., Officer Thor Johnson of the St. Paul Police Department drove to Hudson's house and observed the grey Grand Prix parked outside. Law enforcement detained Daniels and Hudson when they exited the house. In executing a search warrant of the residence, law enforcement recovered a 9mm handgun. Ballistics testing revealed that the handgun fired the shell casing that Officer Johnson found outside of A.C's apartment building. Law enforcement also recovered a round of ammunition with the same stamping as the casing found at the scene of the shooting. And while 92% of the general population could be excluded as a contributor to the DNA mixture found on the 9mm handgun, Daniels could not be excluded.

On the morning following his arrest, Daniels admitted to law enforcement that he shot a handgun into the air the prior evening. Daniels subsequently moved to suppress his statement on various grounds. The district court held a suppression hearing at which Sergeant Sheila Lambie testified that she interviewed Daniels with another officer at approximately 9:00 a.m. on September 4, 2012. Prior to questioning, Lambie informed Daniels of his *Miranda* rights, and Daniels initialed the *Miranda* advisories indicating he understood his rights and signed the *Miranda* waiver form. Lambie testified that Daniels then voluntarily agreed to speak to them and appeared alert and responsive to questioning. The Government submitted as evidence an audio recording of the interview and the *Miranda* waiver form signed and initialed by Daniels.

A magistrate judge recommended that Daniels' motion to suppress be denied, concluding that the totality of the circumstances showed that Daniels waived his *Miranda* rights and made his statements in a voluntary manner. The district court adopted the magistrate judge's findings and denied Daniels' motion to suppress.

Four days before trial, the Government learned for the first time from law enforcement that a video recording existed of Daniels and Hudson in the squad car

after their arrest. The Government obtained the video the following day and provided a copy to defense counsel. The video was recorded approximately eight hours prior to Daniels' interview with Sergeant Lambie.

In response, Daniels filed a second motion to suppress and, alternatively, a motion to reopen the suppression hearing, alleging that the newly-received video evidence showed him intoxicated in the squad car and therefore supported his position that his *Miranda* waiver and subsequent statements to police were involuntary. After reviewing the video and hearing arguments, the district court denied Daniels' motions. Trial commenced and the jury convicted Daniels of one count of felon in possession of a firearm.

At sentencing, the district court determined that Daniels was subject to a fifteen-year mandatory minimum sentence as an armed career criminal under 18 U.S.C. § 924(e). The district court sentenced Daniels to 204 months (17 years) in prison—58 months below the bottom of the Guidelines range of 262 to 327 months. Daniels filed a timely notice of appeal.

## II. Discussion

### A. Motion to Suppress

Daniels first argues that his waiver of *Miranda* rights and subsequent statements to law enforcement were not given voluntarily due to the combination of his intoxicated and fatigued state as well as the interviewing officers' coercive tactics.

"We consider the totality of the circumstances, including the conduct of the officers and the characteristics of the accused, in determining whether a suspect's waiver or statements were the product of an overborne will." *United States v. Havlik*, 710 F.3d 818, 822 (8th Cir. 2013). "We consider, among other things, the degree of

police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental condition." *Sheets v. Butera*, 389 F.3d 772, 779 (8th Cir. 2004). We review the district court's factual findings for clear error and the ultimate determination that the accused knowingly and voluntarily waived his rights and made his admissions de novo. *United States v. Makes Room*, 49 F.3d 410, 414 (8th Cir. 1995).

The district court adopted the magistrate judge's findings that Daniels was coherent, responsive, and alert during the interview and expressed no outward manifestations that would suggest his *Miranda* waiver or subsequent admissions were involuntary. These findings are not clearly erroneous. During the relatively brief interview, Daniels answered the officers' questions coherently and intelligibly. He never told officers that he was confused, tired, or intoxicated, nor did his actions or words suggest that he felt compelled to speak to the officers against his will. There was also no indication of coercion, threats, or promises by officers that would overbear Daniels' will during any portion of the interview. Accordingly, the record discloses no error in allowing the statements. We affirm the district court's judgment denying the motion to suppress.

## B.     Motion to Reopen Suppression Hearing

Next, Daniels argues that the district court erred by denying his motion to reopen the suppression hearing after law enforcement disclosed the squad car video. "We review the district court's denial of [a] motion to reopen [a] suppression issue for abuse of discretion." *United States v. Chavez Loya*, 528 F.3d 546, 555 (8th Cir. 2008).

The district court concluded that the squad car video did not change its ultimate conclusion that Daniels' *Miranda* waiver and subsequent admissions were voluntary. The district court found that although Daniels could have been under the influence

of "something" while in the squad car, he did not slur his speech when speaking to the officers; he "was oriented to time, place, and remembered specific details" as he conversed with the officers; and "whenever there [were] any exchanges, he knew where he was" and "knew what had happened." These findings are supported by the record. Moreover, to the extent that the squad car video suggests indicia of intoxication at the time of Daniels' arrest, that fact bears little weight on Daniels' state of mind during the actual interview, which occurred approximately eight hours after the squad car video was recorded. The district court did not abuse its discretion in denying Daniels' motion to reopen the suppression hearing.

### C.    Sentencing

Next, Daniels argues that the district court's determination that he qualified as an armed career criminal under 18 U.S.C. § 924(e) violated his Sixth Amendment rights in two ways. Daniels argues that the jury as opposed to the court was required to determine (1) whether his criminal history included the necessary predicate offenses to trigger application of the ACCA and (2) whether his prior convictions for second-degree assault could be counted as separate offenses under the ACCA.

Daniels concedes that his arguments are foreclosed by our precedent. First, we have held that "district courts may continue to impose career offender enhancements without having a jury determine the fact of prior convictions" because the Supreme Court's decision in *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), remains controlling precedent in this circuit. *United States v. Hunter*, 770 F.3d 740, 745 (8th Cir. 2014). Second, we have held that the question of whether prior felonies were committed on separate occasions may be resolved by a judge without violating a defendant's rights under the Sixth Amendment. *See United States v. Wilson*, 406 F.3d 1074, 1075 (8th Cir. 2005), *abrogated on other grounds by United States v. Miller*, 305 F. App'x 302, 303 (8th Cir. 2008) (per curiam) (unpublished). Accordingly, we conclude that Daniels' Sixth Amendment claims are without merit.

Daniels also argues that his 204-month sentence is substantively unreasonable. In reviewing the substantive reasonableness of a sentence, "whether inside or outside the Guidelines range, we apply a deferential abuse-of-discretion standard." *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (citation omitted) (internal quotation marks omitted). "An abuse of discretion occurs when: (1) a court fails to consider a relevant factor that should have received significant weight; (2) a court gives significant weight to an improper or irrelevant factor; or (3) a court considers only the appropriate factors but in weighing them commits a clear error of judgment." *United States v. Williams*, 624 F.3d 889, 896-97 (8th Cir. 2010). The factors at issue are set forth in 18 U.S.C § 3553(a). "The district court has wide latitude to weigh the § 3553(a) factors in each case and assign some factors greater weight than others in determining an appropriate sentence." *United States v. Bridges*, 569 F.3d 374, 379 (8th Cir. 2009).

Here, the district court applied the § 3553(a) factors and set forth a reasoned basis for imposing a 204-month sentence. The court acknowledged that Daniels had a difficult upbringing, but also emphasized Daniels' violent criminal history and the seriousness of his crime. *See* 18 U.S.C § 3553(a)(1) (noting that the court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant"). The district court also considered the need to protect the public, *see* § 3553(a)(2)(C); to avoid unwarranted sentencing disparities, *see* § 3553(a)(6); and to promote respect for the law in the eyes of the community, *see* § 3553(a)(2)(A), before imposing a sentence of 204 months—58 months below the bottom of the Guidelines range of 262 to 327 months. Considering the sentencing record as a whole, we conclude that the district court did not abuse its discretion in imposing Daniels' sentence.

## III. Conclusion

For the foregoing reasons, we affirm.

_____