# United States Court of Appeals
### For the Eighth Circuit

_____

No. 22-1841
_____

United States of America

*Plaintiff - Appellee*

v.

Patrick Medearis

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Central

_____

Submitted: December 16, 2022
Filed: April 24, 2023

_____

Before LOKEN, ERICKSON, and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

Patrick Medearis was convicted of being a prohibited person in possession of a firearm. He appeals the district court's[1] denial of his pretrial suppression motion,

_____

[1]The Honorable Roberto A. Lange, Chief Judge, United States District Court for the District of South Dakota.

the denial of his motion in limine to exclude flight evidence, the admission of statements at trial, and the calculation of his base offense level. We affirm.

I.

On April 22, 2020, police went to arrest Medearis for an incident that happened the day before. Medearis fled first on an ATV and then in a car. Once stopped, Medearis was sent to the hospital to receive medical attention. Meanwhile, officers searched Medearis's car, finding guns and ammunition.

Days later, a police officer thought that he saw Medearis's car. When the officer tried to pull him over, Medearis fled again, leading police on a lengthy chase that ended with spike strips. Medearis was arrested. He waived his *Miranda* rights, and then made statements about being an addict and touching the guns found in the car after the first chase.

A grand jury indicted Medearis for being a prohibited person in possession of a firearm, 18 U.S.C. §§ 922(g)(1), (g)(3), 924(a)(2), (d). Medearis moved to suppress his statements, arguing that his *Miranda* waiver was invalid. The district court denied the motion. Medearis then moved in limine to exclude testimony that he had or used a gun in connection with the incident that led police to confront him on April 22. The district court granted the motion in part, prohibiting the Government from presenting hearsay testimony about the gun. Medearis also moved in limine to exclude evidence of his second flight from police, which was denied.

At trial, the Government mentioned in their opening statement that officers engaged Medearis on April 22 "in connection with [the] incident that happened the previous day where he may have had a gun." Trial Tr. Vol. I 4:23−24. Later, an officer testified that he "was informed that [Medearis] did have—or might possess a firearm in th[e] vicinity" of a residence that the officer first went by on April 22 to find Medearis. Trial Tr. Vol. II 83:23−25. Medearis objected and was overruled both times, and the jury convicted.

-2-

At sentencing, Medearis objected to a base offense level enhancement for having two qualifying felony convictions of either a crime of violence or a controlled substance offense. U.S.S.G. § 2K2.1(a)(2). The district court overruled the objection and sentenced Medearis to 96 months in prison. He appeals.

## II.

We first address the denial of Medearis's suppression motion, which we review *de novo*. *United States v. Harper*, 466 F.3d 634, 643 (8th Cir. 2006).

Before making incriminating statements about drugs and guns, Medearis waived his *Miranda* rights. He argues that his waiver was invalid because he tested positive for drugs, had a neck wound and expressed discomfort, was in a suicide smock and dealing with serious mental health issues, and was interviewed hours after his arrest late the previous night. We disagree.

A valid *Miranda* waiver must be, under the totality of the circumstances, voluntary, knowing, and intelligent. *Id.* A voluntary waiver is one that is "the product of a free and deliberate choice rather than intimidation, coercion, or deception," while a knowing and intelligent waiver is one that is "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* (citation omitted).

Here, the totality of the circumstances suggests that Medearis voluntarily, knowingly, and intelligently waived his rights. He was not intimidated, coerced, or deceived. On the contrary, officers ensured Medearis appreciated the rights he was waiving, told him that it was his decision to talk, and advised him that he could end the interview at any time. Medearis also had prior experience with the criminal justice system, supporting the validity of his waiver. *Cf. United States v. Gallardo-Marquez*, 253 F.3d 1121, 1123 (8th Cir. 2001).

Medearis's further arguments also don't invalidate his waiver. For example, he said he felt like he was "breathing out of [a wound on his] neck." But he also responded, "[l]et's just talk, let's go," when an officer asked if he would rather talk later in the day. Medearis had drugs in his system, was dealing with serious mental health issues, and was questioned the morning after his late-night arrest. But his will wasn't "overborne" by these "impairments." *United States v. Gaddy*, 532 F.3d 783, 788 (8th Cir. 2008) (citation omitted). Rather, he was lucid and responsive throughout the interview. *See United States v. Daniels*, 775 F.3d 1001, 1005 (8th Cir. 2014). All things considered, Medearis validly waived his rights, and the district court did not err.

III.

We next address the admission of statements at trial asserting that police engaged Medearis on April 22 in connection with an incident where he may have had a gun. "We review a district court's contested hearsay rulings for an abuse of discretion and will not reverse if the error was harmless." *United States v. Juhic*, 954 F.3d 1084, 1089 (8th Cir. 2020). An evidentiary error is harmless "if it did not influence, or only slightly influenced, the verdict." *White Commc'ns, LLC v. Synergies3 Tec Servs., LLC*, 4 F.4th 606, 612 (8th Cir. 2021).

Medearis argues that the district court improperly admitted hearsay statements that the incident leading officers to engage him on April 22 involved a gun. He says that the propriety of the investigation was not at issue, and the statements were offered for their truth, so they shouldn't have been admitted. *See United States v. Holmes*, 620 F.3d 836, 841 (8th Cir. 2010) (explaining that out-of-court statements "offered to explain the reasons for or propriety of a police investigation" are not hearsay, but noting that "[t]his type of evidence will be allowed into evidence . . . only when the propriety of the investigation is at issue in the trial" (cleaned up)). In any case, Medearis contends that the statements were not harmless because they spoke to a key issue at trial—whether he knowingly possessed a gun.

Whatever our views are on the statements' admissibility, their admission was at most harmless error. The evidence at trial showed that on the day the guns were discovered, police watched Medearis get in a car and drive off. When the pursuit ended, police found two guns in the passenger seat. These were not small guns either; a shotgun and rifle were next to Medearis in the car. And, importantly, Medearis admitted to touching the guns in his interview. These facts all show that Medearis knowingly possessed the guns, meaning the statements had, if any, a slight effect on the verdict.

## IV.

We now turn to the denial of Medearis's motion in limine to exclude evidence of his second flight from police, which we review for an abuse of discretion. *United States v. Wilcox*, 487 F.3d 1163, 1170 (8th Cir. 2007).

We look to four inferences to determine whether flight evidence is admissible. *United States v. Chipps*, 410 F.3d 438, 449–50 (8th Cir. 2005). Medearis takes issue with one of the four. He suggests that we can't infer that the guilt flowing from the second flight was connected to the crime charged in his case—his possession of guns, which were found after the first flight on April 22. According to Medearis, he could have fled the second time for any number of reasons, so it is too speculative that he fled because of the guns officers found in his car days earlier. In any case, Medearis says that any probative value the second flight had was substantially outweighed by the danger of unfair prejudice. We disagree.

Medearis's second flight happened only four days after the first flight, which ended with him going to the hospital, not jail. When chased the second time, Medearis raced away at over 100 miles an hour, threw objects out of his window, and surrendered only after his car ran over spike strips.[2] These facts support an

---

[2]Medearis suggests that these facts were unnecessary and prejudicial. Contrary to Medearis's argument, these facts tended show the extreme lengths he

inference of guilt flowing from his possession of guns. *Cf. United States v. Hall*, 44 F.4th 799, 803 (8th Cir. 2022) (concluding that the defendant's second flight from police supported an inference of guilt flowing from his crime where the crime had occurred nine days earlier, but where the defendant left his job and home and fled from two traffic stops after committing the crime). True, this inference doesn't mean Medearis couldn't have fled for other reasons. But "[t]he existence of other possible reasons for flight does not render the inference [in this case] impermissible or irrational." *United States v. Clark*, 45 F.3d 1247, 1251 (8th Cir. 1995).

For similar reasons, the flight evidence wasn't unfairly prejudicial. "[R]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." *United States v. Betcher*, 534 F.3d 820, 825 (8th Cir. 2008) (quoting Fed. R. Evid. 403). "Unfair prejudice means an undue tendency to" decide a case "on an improper basis." *Id.* Here, the flight evidence tended to show that Medearis wanted to avoid capture for and felt guilty about a crime committed days earlier. While it is possible Medearis fled for other reasons, the flight's probative value wasn't substantially outweighed by the danger of unfair prejudice, and the district court did not abuse its discretion.

V.

We finally address whether Medearis's prior convictions qualify as predicates for Guidelines calculation purposes, which we review *de novo*. *United States v. Roberts*, 975 F.3d 709, 718 (8th Cir. 2020).

Under U.S.S.G. § 2K2.1(a)(2), a defendant's base offense level starts at 24 if the defendant has "at least two felony convictions of either a crime of violence or a controlled substance offense." In 2006, Medearis was convicted of conspiracy to distribute and possession with intent to distribute a controlled substance under 21 U.S.C. §§ 841(a)(1), 846. Years later, he was convicted of assaulting, opposing,

---

was willing to go to avoid capture. These details mattered and weren't unfairly prejudicial.

resisting, and impeding a federal officer in violation of 18 U.S.C. § 111(a) and (b). Medearis argues that his prior convictions do not qualify for Guidelines calculation purposes.

Medearis suggests that his prior conspiracy conviction can't be a controlled substance offense. We held otherwise in *United States v. Mendoza-Figueroa*, 65 F.3d 691, 694 (8th Cir. 1995), and find no reason to revisit this issue. Since Medearis's conviction under § 846 was a qualifying predicate, the district court did not err. *See United States v. Tabb*, 949 F.3d 81, 88 (2d Cir. 2020); *accord United States v. Smith*, 989 F.3d 575, 586 (7th Cir. 2021).

The district court also didn't err when it deemed Medearis's prior § 111 conviction a crime of violence. Medearis first argues that § 111 doesn't constitute a crime a violence because it is overbroad—that is, it includes conduct not captured by the Guidelines. Medearis next says that § 111 can't be a crime of violence because it can be violated where a defendant has only a reckless state of mind. *See Borden v. United States*, 141 S. Ct. 1817, 1821–22 (2021) (holding that crimes committed with only a reckless *mens rea* cannot constitute violent felonies under the ACCA). *See generally United States v. Clark*, 1 F.4th 632, 635 (8th Cir.) ("We treat the terms 'violent felony' under the ACCA and 'crime of violence' under the Guidelines as interchangeable."), *cert. denied*, 142 S. Ct. 511 (2021). We address each argument in turn.

Under the Guidelines, "'crime of violence' means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that . . . has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1). Physical force "means *violent* force— that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010).

To determine whether a § 111 conviction is a crime of violence, we apply the modified categorical approach because § 111 is divisible. *See United States v.*

*Rafidi*, 829 F.3d 437, 444–45 (6th Cir. 2016); *United States v. Bullock*, 970 F.3d 210, 214 (3d Cir. 2020); *United States v. Taylor*, 848 F.3d 476, 492 (1st Cir. 2017). Under this approach, we can consider "a limited class of documents," like the indictment, to identify the elements of the offense Medearis was convicted of. *United States v. Fisher*, 25 F.4th 1080, 1084 (8th Cir. 2022) (citation omitted).

In 2016, Medearis was indicted for forcibly assaulting, resisting, opposing, impeding, intimidating, and interfering by using a deadly and dangerous weapon— a knife. To convict him, the Government had to show that he violated § 111(a) and 111(b). *See Rafidi*, 829 F.3d at 445. Comparing the elements of a § 111(b) conviction to the Guidelines definition of crime of violence, we conclude, as our sister circuits have, that a § 111(b) conviction constitutes a categorical crime of violence. *See Taylor*, 848 F.3d at 494 (explaining that "[a] defendant who acts 'forcibly' using a deadly or dangerous weapon under § 111(b) must . . . at least [have] threatened the employee, with an object that, as used, is capable of causing great bodily harm"); *see also Gray v. United States*, 980 F.3d 264, 266−67 (2d Cir. 2020); *Bullock*, 970 F.3d at 217.

Medearis nevertheless argues that a § 111(b) conviction can't be a crime of violence because it can be recklessly committed, which would contradict *Borden*, 141 S. Ct. at 1822. This argument is misplaced. A defendant must intentionally assault someone under § 111, *United States v. Hanson*, 618 F.2d 1261, 1265 (8th Cir. 1980), so a § 111(b) conviction "necessarily require[s] a finding that [the defendant] intentionally used, attempted to use, or threatened to use physical force against the person of another." *United States v. Hernandez-Hernandez*, 817 F.3d 207, 217 (5th Cir. 2016); *see also United States v. Kendall*, 876 F.3d 1264, 1270 (10th Cir. 2017); *Bullock*, 970 F.3d at 215.

Because Medearis had two qualifying predicates, the district court did not err in applying § 2K2.1(a)(2).

## VI.

We affirm the judgment of the district court.

_____