**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 20-7579**

_____

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

ANTONIO VLADIMAR STOWE MCDANIEL,

Defendant – Appellant.

_____

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Graham C. Mullen, Senior District Judge.  (3:93-cr-00129-GCM-HM-1; 3:16-cv-00371-GCM)

_____

Argued:  September 20, 2023                    Decided:  October 20, 2023

_____

Before NIEMEYER, KING, and HARRIS, Circuit Judges.

_____

Affirmed by published opinion.  Judge King wrote the opinion, in which Judge Niemeyer and Judge Harris joined.

_____

**ARGUED:**  Ann Loraine Hester, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant.  Elizabeth Margaret Greenough, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.  **ON BRIEF:**  John G. Baker, Federal Public Defender, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for

Appellant.  Dena J. King, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

_____

KING, Circuit Judge:

Antonio Vladimar Stowe McDaniel sought post-conviction relief under 28 U.S.C. § 2255 and, in the alternative, coram nobis relief, in the Western District of North Carolina. His § 2255 motion and his coram nobis petition were both denied by the district court. *See* J.A. 180.[1]  In this appeal, McDaniel challenges only the denial of his petition for coram nobis relief, asserting that the court erred and abused its discretion in so ruling.[2]  McDaniel maintains that he is entitled to a writ of coram nobis because (1) he was convicted in that very court in 1993 under 18 U.S.C. § 924(c), (2) he has served his sentence for that offense, and (3) the sole predicate for his 1993 conviction — a violation of 18 U.S.C. § 111 — is no longer a crime of violence.[3]  As explained herein, our coram nobis analysis must primarily assess and resolve two issues — (1) whether a violation of § 111(b) constitutes a crime of violence, and (2) whether McDaniel has shown that his 1993 conviction does not rest on a § 111(b) violation.  Put succinctly, an error of the most fundamental character has not been shown, McDaniel is not entitled to a writ of coram nobis, and the district court did not abuse its discretion in denying coram nobis relief.  We therefore affirm the judgment.

---

[1] Citations herein to "J.A. ___" refer to the contents of the Joint Appendix filed by the parties in this appeal.

[2] The ancient and rare writ of coram nobis affords a district court the authority to vacate a criminal conviction after a defendant's sentence has been completely served. *See United States v. Morgan*, 346 U.S. 502, 506, 513 (1954).

[3] For purposes of brevity, § 111 of Title 18 of the United States Code, as well as its subparts (a) and (b), are herein referred to as "§ 111," "§ 111(a)," and "§ 111(b)."

3

I.

A.

In June 1993, a Deputy U.S. Marshal chased a man named Jenkins from a Burger King restaurant in Charlotte, North Carolina, after Jenkins had stolen a patron's cellphone. Jenkins fled in his vehicle, in which petitioner McDaniel was a front seat passenger. During the ensuing chase, McDaniel leaned from a car window and fired at least two pistol shots at the Deputy Marshal and his vehicle. *See* J.A. 189–90. The federal officer soon lost sight of the getaway vehicle, but later identified and found it in a private driveway. Shortly thereafter, the Deputy Marshal arrested Jenkins, who named McDaniel as his criminal accomplice. McDaniel was arrested in early July of 1993.

On July 16, 1993, McDaniel was charged by the United States Attorney in a single-count Information that alleged a 18 U.S.C. § 924(c)(1) offense, that is;

> On or about June 4, 1993, in Charlotte, Mecklenburg County, within the Western District of North Carolina,
>
> ANTONIO VLADIMAR STOWE MCDANIEL
>
> during and in relation to a crime of violence, to wit: an assault on a deputy marshall [sic] in violation of 18 U.S.C. § 111, for which he may be prosecuted in a court of the United States, did knowingly use and carry a firearm, and did aid and abet in the use and carrying of said firearm, in violation of Title 18, United States Code, Sections 924(c)(1) and 2.

*See* J.A. 6. McDaniel agreed to plead guilty to the charge in the Information, in exchange for an agreement by the United States Attorney that McDaniel would not be prosecuted for other crimes arising out of his conduct.

4

The plea agreement states, inter alia, that McDaniel "is presently charged in a Bill of Information . . . with using a firearm during and in relation to a crime of violence." *See* J.A. 184. In the plea proceedings, the district court accepted McDaniel's guilty plea, and he was sentenced to 36 months in prison, to be followed by three years of supervised release.[4] The criminal judgment again recited that the offense of conviction was a firearms offense, and it related that McDaniel had "carr[ied] [a] firearm during and in relation to a crime of violence." *See* J.A. 7. McDaniel was released from federal custody in 1996 and the court recognized completion of his sentence by terminating his supervised release in May of 1997.

B.

In 2005, McDaniel found himself again in trouble with the federal law enforcement authorities and was indicted in the Western District of North Carolina on four federal offenses — possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841; possession of a firearm in connection with a drug trafficking crime, in violation of § 924(c); possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); and possession of body armor, in violation of 18 U.S.C. § 931(a)(1). In the firearm possession charge, the Indictment alleged that McDaniel had been previously convicted of "Assault on a Deputy United States Marshal with a Deadly Weapon." *See* J.A. 36. McDaniel pleaded guilty to

---

[4] The parties were unsuccessful in securing a transcript of the plea colloquy, and details of the plea proceedings are therefore not in the record.

the body armor possession charge, but otherwise went to trial. In 2006, a jury found him guilty of the three other offenses, including his second § 924(c) conviction.

McDaniel was sentenced to 151 months in prison on the drug trafficking crime, with the sentences on the firearm possession and body armor possession offenses to run concurrently. Notably, McDaniel was also sentenced to the mandatory minimum of 300 months (25 years), to be served consecutively, for possession of a firearm in connection with a drug trafficking crime, as mandated by § 924(c)(1)(C).[5]

C.

In 2015 and 2019, the Supreme Court announced two major sentencing-related decisions that underpin the issues presented today, *Johnson v. United States*, 576 U.S. 591 (2015) and *United States v. Davis*, 139 S. Ct. 2319 (2019). In *Johnson* the Supreme Court declared that the so-called "residual clause" in 18 U.S.C. § 924(e)'s definition of a "violent felony" was unconstitutionally vague. *See* 576 U.S. at 606.[6] Four years later, in June 2019,

---

[5] Section 924(c)(1)(C) of Title 18 provides for a 25-year mandatory minimum sentence. It provides in relevant part that, after "a violation of this subsection that occurs after a prior conviction under this subsection has become final, the person shall . . . be sentenced to a term of imprisonment of not less than 25 years." *See* 18 U.S.C. § 924(c)(1)(C).

[6] Section 924(e) of Title 18 contains two definitions for the term "violent felony." The first defines a violent felony as one that "has as an element the use, attempted use, or threatened use of physical force against the person of another." *See* 18 U.S.C. § 924(e)(2)(B)(i). This definition of a violent felony has generally been referred to as the "force clause." The second definition — the so-called "residual clause" — defines a violent felony as one that "involves conduct that presents a serious potential risk of physical injury to another." *See* 18 U.S.C. § 924(e)(2)(B)(ii).

the Court decided *Davis*, extending the ruling of *Johnson* to § 924(c)'s residual clause, and recognizing that clause to be similarly unconstitutional.   *See* 139 S. Ct. at 2336.[7]

Less than a year after the *Johnson* decision, on June 16, 2016, McDaniel filed a letter with the district court Clerk in the Western District of North Carolina, arguing that his 1993 conviction was legally invalid.  His letter was recognized by the court as a 28 U.S.C. § 2255 motion to vacate that conviction.  On June 20, 2016, the Federal Public Defender entered an appearance on behalf of McDaniel and supplemented his initial filing with the Clerk.  On September 16, 2016, the district court stayed the § 2255 proceedings, in order to allow our Court and the Supreme Court to resolve whether the *Johnson* decision applied to § 924(c), a delay that culminated in 2019 with issuance of the Court's *Davis* decision.  Thereafter, with the assistance of his counsel, McDaniel contended that his predicate offense for his 1993 conviction, i.e. the § 111 offense, was a crime of violence only under the now-unconstitutional residual clause.  McDaniel also argued, in the alternative, that if his motion for § 2255 relief was denied because his sentence on his 1993 conviction had been completed in 1997, he was entitled to a writ of coram nobis.

---

[7] Section 924(c)(3) of Title 18 defines the term "crime of violence," and like § 924(e), contains both a force clause and a residual clause.  Section 924(c)(3)(A)'s force clause provides that a crime of violence is a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another."  *See* 18 U.S.C. § 924(c)(3)(A).  Its residual clause provides that a crime of violence is a felony "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."  *See* 18 U.S.C. § 924(c)(3)(B).

In August 2020, the Government moved to dismiss McDaniel's application for § 2255 relief and for a writ of coram nobis. By its motion to dismiss, the Government maintained that § 2255 relief was inappropriate because McDaniel was seeking to vacate his 1993 conviction and the sentence on that conviction had been completed. It also argued that McDaniel could not satisfy the exacting requirements for a writ of coram nobis, primarily because he could not prove that the underlying § 111 offense for his 1993 conviction was not a crime of violence.

On September 24, 2020, the district court agreed with the Government, and both of McDaniel's requests for relief were denied. *See* J.A. 180. The district court first ruled that § 2255 relief was inappropriate because McDaniel had completed his sentence on the challenged 1993 conviction. Additionally, the court addressed his coram nobis request, and explained in its order that McDaniel had failed to show that the predicate offense for his 1993 conviction was not a crime of violence. As a result, the court declined to exercise its discretion and award a writ of coram nobis.

McDaniel has not appealed from the denial of his § 2255 motion. He has appealed only from the district court's denial of coram nobis relief. We possess jurisdiction with respect to the court's coram nobis denial pursuant to 28 U.S.C. § 1291.

II.

A district court's decision to deny a petition for a writ of coram nobis is reviewed on appeal for abuse of discretion. *See United States v. Lesane*, 40 F.4th 191, 196 (4th Cir. 2022). And a "court abuses its discretion when it acts in an arbitrary manner, when it fails

8

to consider judicially-recognized factors limiting its discretion, or when it relies on erroneous factual or legal premises." *See United States v. Henry*, 673 F.3d 285, 291 (4th Cir. 2012). Under that standard, the court's factual findings are reviewed for clear error and its legal conclusions are reviewed de novo. *See Dewhurst v. Cent. Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011). The issue of whether a criminal offense qualifies as a crime of violence under § 924(c) is a legal question that we review de novo. *See United States v. Evans*, 848 F.3d 242, 245 (4th Cir. 2017).

### III.

We have heretofore recognized that the framework for evaluating a coram nobis petition consists of four requirements, that is: "(1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character." *See United States v. Lesane*, 40 F.4th 191, 197 (4th Cir. 2022); *see also United States v. Akinsade*, 686 F.3d 248, 252 (4th Cir. 2012). This appeal is thus focused on whether McDaniel is entitled to coram nobis relief in connection with his 1993 conviction. After resolving the first three requirements of the coram nobis framework, we will discuss two questions relating to the fourth requirement. That is, (1) whether a violation of § 111(b) constitutes a crime of violence, and (2) whether McDaniel has shown that his 1993 conviction does not rest on a § 111(b) violation.

9

A.

Having carefully considered each of the first three requirements for coram nobis relief, we are disposed to the view that they are satisfied. First of all, McDaniel cannot seek relief by using the typical collateral relief procedures provided by 28 U.S.C. §§ 2255 or 2241, in that his sentence on the 1993 conviction has been completed. A more usual judicial remedy is therefore not available. *See United States v. Akinsade*, 686 F.3d 248, 252 (4th Cir. 2012). The second requirement — timeliness — is also satisfied because McDaniel sought relief less than a year after the Supreme Court's *Johnson* decision was rendered, and three years prior to its *Davis* ruling. *See Bereano v. United States*, 706 F.3d 568, 576 (4th Cir. 2013). The third requirement for coram nobis relief — the existence of a live case or controversy — is also satisfied. That is, a negative impact on a petitioner's sentence in a subsequent criminal proceeding — here, McDaniel's 2006 sentence was substantially impacted by his 1993 conviction — satisfies the case or controversy requirement. *See Lesane*, 40 F.4th at 203. McDaniel has therefore satisfied the first three requirements for coram nobis relief.

B.

The fourth and final requirement for coram nobis relief is the controlling issue here, and we turn to it. In that regard, McDaniel argues that the predicate offense for his 1993 conviction — assault on a federal officer under § 111 — is not categorically a crime of violence. As explained below, however, our assessment of § 111 leads us to conclude that

one of the two offenses defined in § 111 as it existed in 1993 — assault under § 111(b) — was categorically a crime of violence.[8]

1.

Section 924(c) creates criminal liability for "any person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." *See* 18 U.S.C. § 924(c)(1)(A). Thus, an essential element of McDaniel's 1993 conviction was that his conduct was "in relation to [a] crime of violence or drug trafficking crime." *Id.* Because we agree with the parties that a § 111 offense is not a drug trafficking crime, that specific predicate offense is not relevant here. It was the "crime of violence" predicate offense that had to be satisfied when he pleaded guilty in 1993.

To assess whether an offense constitutes a crime of violence, the courts generally apply the categorical approach. Applying that approach, the principal question is "whether the federal felony at issue always requires the government to prove — beyond a reasonable doubt, as an element of its case — the use, attempted use, or threatened use of force." *See United States v. Taylor*, 142 S. Ct. 2015, 2020 (2022). And it is settled that a crime of violence is an offense that requires a mens rea greater than recklessness or negligence. *See Borden v. United States*, 141 S. Ct. 1817, 1834 (2021).

---

[8] Subsequent to McDaniel's 1993 conviction, § 111 was amended on five occasions — in 1994, 1996, 2002, 2008, and 2021. For us, the relevant version is the 1988 version, which was in effect in June 1993.

In many situations, a judicial identification of the elements of a felony statute is relatively simple. Such an inquiry can be more complex, however, when the applicable statute creates multiple offenses, with certain defined offenses being categorically crimes of violence and others that are not. To resolve such complexity, a reviewing court, if the statute is divisible, should apply the "modified categorical approach." *See United States v. Fuertes*, 805 F.3d 485, 498 (4th Cir. 2015). The modified categorical approach searches beyond the applicable statute and "looks to a limited class of documents . . . to determine what crime, with what elements, a defendant was convicted of." *See Mathis v. United States*, 579 U.S. 500, 505–06 (2016).

But the existence of a divisible statute is not always sufficient to warrant our use of the modified categorical approach — that approach can be applied "only if at least one of the categories into which the statute may be divided constitutes, by its elements, a crime of violence." *See United States v. Cabrera-Umanzor*, 728 F.3d 347, 352 (4th Cir. 2013) (emphasis omitted). That is, the modified categorical approach can only be utilized in a circumstance where at least one of the offenses defined by the applicable statute is categorically a crime of violence.

Looking specifically to § 111 as it existed in 1993, we are satisfied that it was a divisible statute.[9] The relevant portion thereof provided as follows:

---

[9] Several of our sister circuits have also recognized that § 111 is a divisible statute. *See United States v. Taylor*, 848 F.3d 476, 492 (1st Cir. 2017); *United States v. Bullock*, 970 F.3d 210, 214 (3d Cir. 2020); *United States v. Hernandez-Hernandez*, 817 F.3d 207, 212 (5th Cir. 2016); *United States v. Rafidi*, 829 F.3d 437, 445 (6th Cir. 2016); *United* (Continued)

12

(a) **In general.**–Whoever–

(1) *forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in* or on account of the performance of *official duties* . . . shall, be fined under this title or imprisoned *not more than three years*, or both. . . .

(b) **Enhanced penalty.**–Whoever, in the commission of any acts described in subsection (a), *uses a deadly or dangerous weapon*, shall be fined under this title or imprisoned *not more than ten years*, or both.

18 U.S.C. § 111 (1993) (emphasis added).

In our view, the relevant version of § 111 defines two distinct criminal offenses for an assault on a federal officer.[10]  *See Mathis*, 579 U.S. at 518; *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).  One of those offenses was defined in § 111(a), and was "felony assault," which requires a forcible assault.  The second and most serious offense defined by § 111 was in § 111(b), and it was "enhanced felony assault."  The § 111(b) offense of "enhanced felony assault" required proof of an act identified in § 111(a), plus the use of a deadly or dangerous weapon.  *See United States v. Briley*, 770 F.3d 267, 273 (4th Cir. 2014).  Summing up, two separate offenses were defined in the relevant 1993 version of § 111, (1) a felony assault, and (2) an enhanced felony assault.

2.

Our determination that § 111 is divisible and defines two separate offenses is only part of the inquiry.  We must also decide whether at least one of those offenses is

---

*States v. Kendall*, 876 F.3d 1264, 1269 (10th Cir. 2017); *United States v. Bates*, 960 F.3d 1278, 1286 (11th Cir. 2020).

[10] A Deputy Marshal of the U.S. Marshals Service is an officer of the United States and readily constitutes a "person designated in section 1114."

13

categorically a crime of violence. Turning again to § 111(a), the offense defined therein — i.e. felony assault — does not constitute a crime of violence. Again, a "crime of violence" is a felony offense that "has as an element the use, attempted use, or threatened use of physical force." *See* 18 U.S.C. § 924(c)(3)(A); *see also Taylor*, 142 S. Ct. at 2020 (2022). And the use of force in this context "means violent force — that is, force capable of causing physical pain or injury to another person." *See Johnson v. United States*, 559 U.S. 133, 140 (2010) (emphasis omitted).

We have implicitly recognized that the § 111(a) "felony assault" offense can be violated with a degree of force that is less than violent force. *See United States v. Corbitt*, 675 F.2d 626, 629 (4th Cir. 1982) (holding that defendant's shoving of federal officer to prevent grabbing of his shoulder bag violated § 111). Because § 111(a) can be violated with the use of any amount of force against a federal officer, it can be violated with less than violent force. As a result, the felony assault provision of § 111(a) is not categorically a crime of violence.[11]

---

[11] We observe that several of our sister circuits have explicitly recognized that a person can be convicted of "felony assault" under § 111(a) for using any amount of force. *See United States v. Dominguez-Maroyoqui*, 748 F.3d 918, 921 (9th Cir. 2014) (citing *United States v. Fernandez*, 837 F.2d 1031, 1033 (11th Cir.1988) (chasing prosecutor down the street and bumping into him); *United States v. Sommerstedt*, 752 F.2d 1494, 1495 (9th Cir. 1985) (walking up to prosecutor and jolting her arm and shoulder); *United States v. Hightower*, 512 F.2d 60, 61 (5th Cir.1975) (grabbing wildlife agent's jacket); *United States v. Frizzi*, 491 F.2d 1231, 1231–32 (1st Cir. 1974) (spitting in mail carrier's face)).

14

3.

McDaniel's contention of error in his coram nobis petition thus focuses primarily on § 111(b), which he maintains was not categorically a crime of violence. For support, McDaniel primarily relies on the Supreme Court's 2021 decision in *Borden v. United States*, where the Court recognized that an offense with the mens rea of recklessness cannot categorically be a "violent felony" under § 924(e). *See* 141 S. Ct. 1817.[12]   Relying on *Borden*, McDaniel argues that an enhanced felony assault offense under § 111(b) could be satisfied by a reckless assault that used a deadly or dangerous weapon — for example, the use of a motor vehicle.[13]   As explained below, that proposition lacks merit.

a.

In pursuing his contention, McDaniel is unable to get around the fact that the Supreme Court has recognized that § 111 requires proof of "an intent to assault." *See United States v. Feola*, 420 U.S. 671, 684 (1975). In *Feola*, the Court ruled that § 111 does

---

[12] McDaniel maintains that *Borden*, in acknowledging that some state assault offenses can be committed recklessly, actually conceded that § 111(b) could be committed recklessly. Unfortunately for McDaniel, *Borden* did not wrangle with § 111. It deals solely with Tennessee's reckless assault law. *See* 141 S. Ct. at 1831.

[13] In response to McDaniel's argument that § 111(b) could be satisfied by reckless assault, the Government contends that there must be "a realistic probability — not merely a theoretical possibility" that it will actually prosecute a reckless assault under § 111(b). *See United States v. Runyon*, 994 F.3d 192, 201 (4th Cir. 2021). But the Supreme Court recently clarified that a defendant is not required to "present evidence of how his [federal] crime of conviction is normally committed or usually prosecuted." *See United States v. Taylor*, 142 S. Ct. 2015, 2024 (2022). Rather, the "realistic probability" test only applies when a federal court is interpreting state law. *Id.* at 2025; *see also United States v. Green*, 67 F.4th 657, 669 (4th Cir. 2023).

15

not require a specific intent to assault a federal officer. As it recognized, § 111 requires only "an intent to assault." *Id.* That is, § 111 requires that a defendant "knows from the very outset that his planned course of conduct is wrongful." *Id.* at 685.

Relying on *Feola* in an unpublished decision rendered in 2008, we recognized that "to sustain a conviction under § 111(b), the Government must prove the elements in . . . § 111(a) and [also] that the defendant: (1) used a deadly or dangerous weapon; (2) in the commission of an act described in § 111(a); and (3) the defendant used the weapon *intentionally.*" *See United States v. Cooper*, 289 F. App'x 627, 628–29 (4th Cir. 2008) (unpublished) (emphasis added). Notably, at least three of our sister courts of appeals have addressed the mens rea element of § 111(b) and have ruled that it requires an intentional assault. *See, e.g.*, *United States v. Medearis*, 65 F.4th 981, 987 (8th Cir. 2023); *United States v. Acosta-Sierra*, 690 F.3d 1111, 1123 (9th Cir. 2012); *United States v. Arrington*, 309 F.3d 40, 46 (D.C. Cir. 2002). And because there must be "an intent to assault," it is impossible for a mens rea of recklessness to suffice.

McDaniel also maintains that a mens rea of recklessness can satisfy § 111 by pairing *United States v. Blankenship*, 846 F.3d 663 (4th Cir. 2017) — where we held that the term "willfully" in 30 U.S.C. § 820 (a mine safety statute) could be satisfied by a mens rea of reckless disregard — with a definition of assault our Circuit utilized in *United States v. Bryant*, 949 F.3d 168 (4th Cir. 2020). In *Bryant*, drawing on the common law, we ruled that "an assault is committed when a person *willfully* attempts to inflict injury on another, or threatens to inflict injury on another, coupled with an apparent present ability to do so,

16

causing a reasonable apprehension of immediate bodily harm." *See* 949 F.3d at 180 (emphasis added).

Relying on *Bryant*'s use of the term "willfully," coupled with *Blankenship*'s declaration that willfulness can be established by proof of "reckless disregard," McDaniel contends that § 111(b) can be violated with a reckless mens rea, and thus that a violation of § 111(b) is not categorically a crime of violence. That argument fails, however, because the *Blankenship* decision was cabined to a violation of the mine safety statute and does not impact the common law. *See* 846 F.3d 675.

It is also important that, in *Voisine v. United States*, the Supreme Court recognized several years ago that trying to graft recklessness onto common law principles is a messy proposition and should be avoided. *See* 579 U.S. 686, 697–98 (2016) ("Recklessness was not a word in the common law's standard lexicon, nor an idea in its conceptual framework . . . where conduct that we would today describe as reckless fits into that obscure scheme is anyone's guess.") (citations omitted, cleaned up). In these circumstances, we are satisfied that § 111(b) could not be violated recklessly, and McDaniel's reliance on *Borden* must be rejected.

b.

In further arguing that an enhanced felony assault under § 111(b) can be accomplished recklessly, McDaniel urges us to examine other situations where a reckless mental state has satisfied a federal assault conviction. He relies on decisions from three other circuits. *See United States v. Yates*, 304 F.3d 818, 824 (8th Cir. 2002); *United States v. Ashley*, 255 F.3d 907, 911 (8th Cir. 2001); *United States v. Loera*, 923 F.2d 725, 727

17

(9th Cir. 1991); *United States v. Zunie*, 444 F.3d 1230, 1236 (10th Cir. 2006). Put simply, none of those out-of-circuit decisions had applied § 111. And whatever probative value they might offer is undermined by the *Feola* decision, where the Supreme Court explained that a § 111 conviction requires "an intent to assault." *See* 420 U.S. 684. As a result, those decisions fail to alter our view that § 111(b) requires an intent to assault.

4.

Although § 111(b) requires an intention greater than recklessness, a crime of violence must also require "the use, attempted use, or threatened use of force." *See Taylor*, 142 S. Ct. at 2020 (citing § 924(c)). And the force required in this context "means violent force — that is, force capable of causing physical pain or injury to another person." *See Johnson*, 559 U.S. at 140 (2010) (emphasis omitted). Applying these principles, we are satisfied that § 111(b) requires violent force.

We have never squarely addressed whether a violation of § 111(b) categorically constitutes a crime of violence. But we have indicated in an unpublished decision that a § 111(b) offense could be a predicate for a § 924(c) offense. That is, in *United States v. Lewis* in 2018, our Court ruled that plain error review was not satisfied when a § 924(c) conviction was predicated on § 111(b). *See* 724 F. App'x 269, 270 n.* (4th Cir. 2018) (unpublished). Four years later, we emphasized in a published opinion that nine of our sister circuits have ruled that a violation of § 111(b) is a crime of violence. *See United States v. Said*, 26 F.4th 653, 659 n.10 (4th Cir. 2022); *see also Bryant*, 949 F.3d at 181 n.12. Thus, our sister circuits have consistently utilized the categorical approach and ruled

that a violation of § 111(b) is a crime of violence.[14]  Notably, not a single court of appeals

has ruled otherwise.

The requirement that a § 111(b) assault be committed with a deadly or dangerous

weapon allows § 111(b) to readily satisfy the force requirement of § 924(c).  Whether a

weapon is dangerous is not to be based "on the object's intrinsic character but on its

capacity, given the manner of its use."  *See United States v. Sturgis*, 48 F.3d 784, 787 (4th

Cir. 1995) (quotations omitted).  Otherwise stated, an object becomes a dangerous or

deadly weapon based on how it has been "used or attempted to be used."  *Id.*  Its use, by

definition, must be "to cause death or serious injury," or attempt to do so.  *Id.* at 788.

Because § 111(b) requires the use of a dangerous weapon — that is, an instrumentality

used or threatened to be used in a manner to cause death or serious injury — and because

§ 111(a) requires that at least some force be used, the required level of force referenced by

§ 111(b) is violent force.  *See Bryant*, 949 F.3d at 181 ("Because assault requires at least

*some* use or threatened use of force . . . the use of a dangerous weapon to put the victim's

---

[14] The multiple decisions of our sister courts of appeals ruling that § 111(b) is a crime of violence are *United States v. Taylor*, 848 F.3d 476, 494 (1st Cir. 2017); *Gray v. United States*, 980 F.3d 264, 267–69 (2d Cir. 2020) (per curiam); *United States v. Bullock*, 970 F.3d 210, 215–16 (3d Cir. 2020); *United States v. Hernandez-Hernandez*, 817 F.3d 207, 216–17 (5th Cir. 2016); *United States v. Rafidi*, 829 F.3d 437, 446 (6th Cir. 2016); *United States v. Medearis*, 65 F.4th 981, 987 (8th Cir. 2023); *United States v. Juvenile Female*, 566 F.3d 943, 947 (9th Cir. 2009); *United States v. Kendall*, 876 F.3d 1264, 1271 (10th Cir. 2017); *United States v. Bates*, 960 F.3d 1278, 1287 (11th Cir. 2020); *United States v. Quaglin*, 851 Fed. Appx. 218, 218 (D.C. Cir. 2021) (unpublished).

life in jeopardy transforms the force into violent physical force." (quotations omitted)).[15]

Again, it is clear that a § 111(b) violation in 1993 constituted a crime of violence under the categorical approach.[16]

C.

Having concluded our examination of the relevant statutory provisions, we return to the modified categorical approach. Section 111 defined two offenses in 1993 — one offense in § 111(a) that was not a crime of violence, and another offense in § 111(b) that is a crime of violence. The Information to which McDaniel pleaded guilty alleged that § 111 was the predicate offense for the § 924(c) charge, but it did not further identify that offense. We have therefore utilized the modified categorical approach to determine which of the two § 111 offenses McDaniel contravened. Again, applying that approach, we look to a specific subset of documents — generally dubbed *Shepard*-approved documents — and identify which offense the defendant was actually convicted of. *See Mathis*, 579 U.S. at 505. The authorized *Shepard* documents include, inter alia, the charging instrument, the plea agreement, and similar documents. *See United States v. Washington*, 629 F.3d 403, 413–14 (4th Cir. 2011). In this context, the burden was on McDaniel to show that the

---

[15] Certain of our sister circuits have agreed that § 111(b) is a crime of violence because of its requirement that the violative conduct be committed with the use of a deadly or dangerous weapon. *See e.g.*, *Taylor*, 848 F.3d at 494; *Bullock*, 970 F.3d at 215.

[16] Our reading of § 111(b) also receives support from the Supreme Court, which has approved the definition of a violent felony as "[a] crime characterized by extreme physical force, such as murder, forcible rape, and *assault and battery with a dangerous weapon*." *See Johnson*, 559 U.S. at 140–41 (emphasis added).

predicate offense for his 1993 conviction flowed from § 111(a), rather than from § 111(b). *See United States v. Morgan*, 346 U.S. 502, 512 (1954) (applying coram nobis principles, "[i]t is presumed the [original] proceedings were correct and the burden rests on the accused to show otherwise"). McDaniel has simply not satisfied that burden.

1.

The available *Shepard*-approved documents establish that the predicate offense for McDaniel's 1993 conviction was § 111(b), rather than an offense under § 111(a). Although the Information did not allege that the predicate offense was § 111(b), it specified that McDaniel "did knowingly use and carry a firearm, and did aid and abet in the use and carrying of said firearm." *See* J.A. 6. And McDaniel's plea agreement, which was accepted by the district court, confirms that he was "charged in a Bill of Information . . . with using a firearm during and in relation to a crime of violence." *See* J.A. 184. And the criminal judgment confirmed that the offense of conviction was a firearm offense, and again specified that McDaniel had "carr[ied] [a] firearm during and in relation to a crime of violence." *See* J.A. 7.

Those documents support the proposition that McDaniel was charged with and convicted of a § 111(b) violation. Indeed, the firearm that he was convicted of carrying "is an article that is typically and characteristically dangerous" so much so that "the law reasonably may presume that such an article is always dangerous." *See McLaughlin v. United States*, 476 U.S. 16, 17 (1986). Conversely, none of the *Shepard* documents remotely suggest that McDaniel was convicted of an assault under § 111(a). Thus, the *Shepard* documents support the proposition that McDaniel's 1993 conviction rested on

21

§ 111(b). And even if the identity of the predicate § 111 offense could somehow be deemed a toss-up, such an ambiguity would not — in the coram nobis context — establish an error of the most fundamental character. S*ee Morgan*, 346 U.S. at 512 (1954) (explaining that ambiguity alone is not error and emphasizing that "the absence of [an error] from the record does not itself invalidate the judgment"). Again, McDaniel bore the burden of showing that his 1993 conviction did not rest on § 111(b). *Id.* at 512. And that burden has not been satisfied.

2.

McDaniel otherwise resists a ruling that his 1993 conviction rested on § 111(b). He relies on our 2011 *Vann* decision and argues that his guilty plea admitted only the least serious conduct necessary to secure a conviction. *See United States v. Vann*, 660 F.3d 771, 775–76 (4th Cir. 2011). But *Vann* is not a silver bullet in that respect. *Vann* was challenging a criminal judgment that was on direct appeal. This proceeding, on the other hand, seeks the rare collateral remedy of coram nobis relief. In that setting, we must presume that the "proceedings were correct and the burden rests on the accused to show otherwise." S*ee Morgan*, 346 U.S. at 512. *Vann* therefore does not undermine our application of the modified categorical approach. It simply confirms that we are entitled to look to "*Shepard*-approved documents to establish the offense on which the defendant was convicted." *See Vann*, 660 F.3d at 776.

Finally, McDaniel argues that he pleaded guilty only to a § 111(a) offense because, at the time of his 1993 plea, § 111(b) was only a sentencing enhancement. To support this contention, McDaniel argues that *Apprendi v. New Jersey* — which held that a factual

22

determination with respect to a sentencing enhancement must be made by a jury and proven beyond a reasonable doubt — was decided seven years after his conviction. *See* 530 U.S. at 490. Again, it is no consequence that McDaniel could have thought — due to legal conventions of the time — that he was pleading guilty to a violation of § 111(a). To obtain coram nobis relief, McDaniel was obliged to show that his 1993 conviction rested solely on § 111(a). McDaniel has not carried that burden, and he therefore has not satisfied the fourth requirement for coram nobis relief. Because no legal error was made by the district court, it could not have abused its discretion. And because McDaniel is not entitled to a writ of coram nobis, we must affirm.

## IV.

Pursuant to the foregoing, we reject McDaniel's petition for coram nobis relief and affirm the judgment of the district court.

*AFFIRMED*

23